UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JOHN DOE I, et al.,

               Plaintiffs.

      v.

STATE OF ISRAEL, et al.,

               Defendants.

1:02CV01431 - JDB

---

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS CONGREGATION RINAT
YISRAEL, RABBI YOSEF ADLER AND ARNON HILLER
<u>TO DISMISS THE CLAIMS ASSERTED AGAINST THEM</u>**

David O. Bickart (355313)
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W, Suite 1100
Washington, DC  20005-2327
(202) 682-3500

Aaron Stiefel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

Doc#30546655.WPD

Defendants Congregation Rinat Yisrael ("Rinat"), Rabbi Yosef Adler ("Adler"), and Arnon Hiller ("Hiller") (collectively the "Rinat Defendants") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), to dismiss plaintiffs' Complaint as against them on the grounds that: (1) this Court lacks subject matter jurisdiction under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, given that the conduct and effect at issue were extraterritorial; (2) the Fifth Claim for Relief does not state a claim under the RICO Act; (3) absent a RICO claim, this Court lacks personal jurisdiction over the Rinat Defendants who are residents of New Jersey and have no significant contacts with the District of Columbia; and (4) the Eleventh and Thirteenth-Eighteenth Claims for Relief do not state common law tort claims against the Rinat Defendants.[1]

## PRELIMINARY STATEMENT

Plaintiffs bring this case in an attempt to involve the courts of the United States in the ongoing conflict in the Middle East.  Plaintiffs are unidentified Palestinians who claim to have been wronged by members of the Israeli armed forces and by unidentified Israeli civilians. The Complaint recites a host of claims ranging from genocide, crimes against humanity and extra-judicial killing to battery, infliction of emotional distress, and trespass.

The named defendants include (i) the State of Israel, the Israeli Defense Forces ("IDF"), the Israeli General Security Service ("Shin Bet"), and various leaders of the Israeli government and the Israeli military, including the Prime Minister, the former Defense Minister and the former Foreign Minister; (ii) U.S. President George W. Bush and Secretary of State Colin Powell; (iii) defense contractors including Boeing, Textron and Bell Helicopter; (iv)

---

[1]     The remaining claims of the Complaint are not asserted against the Rinat Defendants.

Halamish/Neve Tzuf Settlement ("Halamish"), an Israeli community located in the region commonly referred to as the "West Bank"; and (v) various parties that have provided financial support to Halamish, including the Rinat Defendants.

Defendant Rinat is a synagogue located in Teaneck, New Jersey; defendant Adler is the synagogue's rabbi; and defendant Hiller is a former president of the synagogue. The Complaint alleges that the Rinat Defendants contributed funds to Halamish earmarked for "materials" that have been used to "illegally terrorize" Palestinians and "confiscate their land." (Complaint ¶ 74). One of the plaintiffs -- denominated "John Doe II" in the Complaint -- claims to own land bordering on Halamish and alleges that unidentified "settlers" have taken his land and "traumatized" him. (Complaint ¶ 251-56).

The Complaint includes claims against the Rinat Defendants for violating the RICO Act and for a variety of common law torts. However, the Complaint does not allege that the Rinat Defendants knew of, had any contact with, or directly harmed any of the plaintiffs. Rather, the Complaint seeks to hold the Rinat Defendants vicariously liable simply by labeling them -- without supporting facts -- as "co-conspirators." (Id. at ¶¶ 74, 457). As demonstrated below, however, the claims of the Complaint purportedly asserted against the Rinat Defendants should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6).

This Court lacks subject matter jurisdiction over plaintiff John Doe II's RICO Act claim against the Rinat Defendants (the Fifth Claim for Relief) because the claim is entirely extraterritorial. The tortious conduct that allegedly harmed John Doe II occurred outside of the United States and that conduct did not have a substantial effect in the United States.

In any event, the Complaint's Fifth Claim for Relief fails to state a claim against

the Rinat Defendants under the RICO Act, 18 U.S.C. §§ 1962(b), (c) or (d).  The Complaint asserts that the Rinat Defendants donated monies for use by Halamish.  The Complaint does not allege, as expressly required under § 1962(b), that the Rinat Defendants engaged in "a pattern of racketeering activity" or that the Rinat Defendants "acquire[d] or maintain[ed] . . . any interest in or control of" any RICO "enterprise."  Nor does the Complaint allege, as expressly required under § 1962(c), that the Rinat Defendants "conduct[ed] or participate[d] . . . in the conduct" of the affairs of a RICO "enterprise" or that the Rinat Defendants engaged in a "pattern of racketeering activity."  The Complaint also fails to plead the elements of a conspiracy which, under § 1962(d), would make the Rinat Defendants vicariously liable for other defendants' alleged violations of §§ 1962 (b) and (c).  In particular, the Complaint does not assert that the Rinat Defendants entered into an agreement to carry out a criminal objective.

Furthermore, the only possible argument that this Court has personal jurisdiction over the Rinat Defendants -- who are New Jersey residents with no significant District of Columbia contacts -- would have to be predicated on § 1965(b) of the RICO Act which allows for nationwide service of process where plaintiffs show that the "ends of justice require" it.  If the Court dismisses John Doe II's RICO claim against the Rinat Defendants, thereby eliminating any potential basis for personal jurisdiction in this case, the Court should dismiss the Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth and Eighteenth Claims for Relief claims as against the Rinat Defendants as well.

Finally, even if this Court has personal jurisdiction, the Complaint fails to state common law tort claims against the Rinat Defendants.  There is no allegation that the Rinat Defendants engaged in any sort of unlawful conduct directly impacting plaintiffs.  To the

3

contrary, the acts of the Rinat Defendants at issue in the Complaint -- financial contributions for use by Halamish -- are far removed from the harms claimed by the plaintiff Palestinians. Moreover, as mentioned above, because the Complaint does not allege that the Rinat Defendants and other defendants entered into an agreement with an unlawful objective, the Rinat Defendants cannot be held liable as co-conspirators for the acts of Israeli soldiers or "settlers."[2]

## THE COMPLAINT

### The Parties

Plaintiffs are unidentified Palestinians who claim to have been harmed by members of the Israel military and by unidentified Israeli citizens in the course of the continuing conflict in the Middle East.

The Complaint names four groups of defendants:

(1)     The "Israeli Defendants":  the State of Israel; the Shin Bet; the IDF; officials of the Israeli government, including Prime Minister Ariel Sharon, former Defense Minister Binyamin Ben Eliezer and former Foreign Minister Shimon Peres; and various leaders of the Israeli armed forces;

(2)     U.S. President George W. Bush and Secretary of State Colin Powell;

---

[2]     The political question doctrine is yet another ground for dismissing plaintiffs' claims. See Baker v. Carr, 369 U.S. 186, 211 (1962) (explaining that resolution of questions touching foreign relations "frequently turns on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislative" and that "many [foreign relations] questions uniquely demand single-voiced statement of the Government's view"). Because plaintiffs' claims against the Rinat Defendants are manifestly deficient in multiple ways, this Court need not reach the political question doctrine in order to dismiss plaintiffs' claims against the Rinat Defendants. Nevertheless, the Rinat Defendants reserve the right to raise the political question doctrine as a separate basis for dismissal if this case goes forward.

(3)     The "Arms Defendants":  military contractors such as Boeing, Textron,

Bell Helicopter and executives of those companies; and

(4)     The "Settler Defendants":

(a)     Halamish, an Israeli community on the West Bank;

Neve Tzuf Foundation, an entity which allegedly

solicits funds for Halamish in the United States; and

the chairman of the Foundation; and

(b)     Financial contributors to Halamish:  Christ Lutheran

Church of Jacksonville, Florida; the Central Fund

for Israel and its director; the One Israel Fund and

its director; and the Rinat Defendants.

## The Rinat Defendants

Defendant Rinat is a synagogue -- a religious corporation, organized and existing

under the laws of New Jersey -- that is located in the Township of Teaneck, New Jersey.  (Hiller

Decl., ¶ 5).[3]  Defendant Rabbi Yosef Adler, the spiritual leader of Congregation Rinat Yisrael, is

a resident of the State of New Jersey.  (Adler Decl., ¶ 2).  Defendant Hiller, former president of

defendant Rinat, is a resident of the State of New Jersey. (Hiller Decl., ¶ 2).

---

[3]     "Hiller Decl." and "Adler Decl." refer to the accompanying declarations of defendants
Arnon Hiller and Rabbi Yosef Adler, respectively.

**The Alleged Conspiracy**

Plaintiffs allege generally that "defendants, individually and collectively, have entered into an enterprise and civil conspiracy to violate the rights of Plaintiffs." (Complaint ¶ 2).

**The Allegations of John Doe II**

Plaintiff John Doe II alleges that he is an American citizen and that in 1995 he owned land abutting Halamish. (Complaint ¶¶ 243-48).[4] He avers that in 1995, unidentified "settlers" from Halamish "moved their perimeter fence so that it cut across [his] land, taking approximately one-fourth of his farm." (Id. at ¶ 248).

The Complaint further asserts that John Doe II was "threatened twice by armed settlers." (Id. at ¶ 251). He claims that in 1996 an unidentified "settler" aimed a rifle at him and threatened to shoot him. (Id.). On another occasion, John Doe II was supposedly "confronted by an armed security officer from the settlement who demanded that he leave the area." (Id.).

As also set forth in the Complaint, in October 2000, "approximately 20" unidentified "armed settlers" allegedly entered John Doe II's land, "shooting at the doors and windows of his house," but were dispersed by IDF troops as they "were about to torch his house." (Complaint ¶¶ 252-53).

In addition, John Doe II maintains that on June 13, 2002, unidentified "Halamish settlers" began "bulldozing the remains of his orchard." (Id. at ¶ 254). "Halamish settlers" have also supposedly "destroyed a grove of 108 olive trees" on land which John Doe II owns with his

---

[4]     In an affidavit accompanying the Complaint (Plaintiffs' Ex. O), plaintiff John Doe II claims to "reside in Patterson, N.J." (¶ 2), but to "live in the occupied territories" (¶ 21).

cousin.  (Id. at ¶ 255).

The Complaint claims that as a result of the alleged acts of the unidentified "settlers" John Doe II has been "severely traumatized."  (Id. at ¶ 256).

**The Allegations Regarding The Rinat Defendants**

The allegations of the Complaint with respect to the Rinat Defendants are sparse and conclusory.  Plaintiffs assert that the Rinat Defendants "knowingly provided funds specifically earmarked for materials that are used by [Halamish] to illegally terrorize neighboring property owners and confiscate their land and are coconspirators in the illegal acts of the enterprise."  (Complaint ¶ 74).  The Complaint further alleges that the funds supposedly contributed by defendants Rinat, Christ Lutheran Church, One Israel Fund and Central Fund were "earmarked specifically for various military purposes, including dozens of bullet proof vests and body armor, night-vision goggles, armored jeeps and ambulances, floodlights, ballistic helmets, communications equipment, gun cabinets, generators and even security fence repairs."  (Id. at ¶ 111).  According to the Complaint, "[a]ll of these materials have been used to terrorize Palestinians such as John Doe II and drive them from their land."  (Id. at ¶ 112).

**The Claims Asserted Against The Rinat Defendants**

In the Complaint's Fifth Claim for Relief, John Doe II alleges that the Israeli Defendants and the Settler Defendants -- including the Rinat Defendants -- participated in a RICO enterprise and violated 18 U.S.C. §§ 1962(b), (c) and (d). (Complaint ¶¶ 456-72).

The Complaint also includes claims by various plaintiffs against the Settler Defendants -- including the Rinat Defendants -- for battery (Eleventh Claim), assault (Thirteenth Claim), intentional and negligent infliction of emotional distress (Fourteenth and Fifteenth

Claims); negligence per se (Sixteenth Claim); trespass (Seventeenth Claim); and conversion (Eighteenth Claim).  (Id. at ¶¶ 510-14, 520-57).

## ARGUMENT

## POINT II

### THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER JOHN DOE II'S RICO CLAIM AGAINST THE RINAT DEFENDANTS

Plaintiff John Doe II's RICO claim against the Rinat Defendants -- the Complaint's Fifth Claim for Relief -- should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), because the RICO Act does not apply to conduct outside of the United States which has no substantial impact in the United States.

The D.C. Circuit has recognized that there is a "general presumption against the extraterritorial application of statutes."  Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 530 (D.C. Cir. 1993).  As explained by the D.C. Circuit:

> "Extraterritoriality is essentially, and in common sense, a jurisdictional concept concerning the authority of a nation to adjudicate the rights of particular parties and to establish the norms of conduct applicable to events or persons outside its borders. More specifically, the extraterritoriality principle provides that 'rules of the United States statutory law, whether prescribed by federal or state authority, apply only to conduct occurring within, or having effect within, the territory of the United States.' Restatement (Second) of Foreign Relations Law of the United States § 38 (1965); Restatement (Third) of Foreign Relations Law of the United States § 403, Com. (g) (1987)."

Id.

Although the RICO statute itself "is silent regarding its extraterritorial application," courts have held that the extraterritorial application of the RICO Act hinges on

"'whether Congress would have intended that federal courts should be concerned with specific international controversies.'" North South Finance Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir. 1996) (quoting Alfadda v. Fenn, 935 F.2d 475, 479 (2d Cir. 1991)).  In deciding whether the RICO Act applies in a particular case, "courts have been guided by cases involving the extraterritorial application of the securities and antitrust laws," and "have employed two alternative tests, the 'conduct test' and the 'effects test.'" Giro v. Banco Espanol de Credito, S.A., 1999 U.S. Dist. LEXIS 9673, at *6-7 (S.D.N.Y. 1999), aff'd 208 F.3d 203 (2d Cir. 2000). See also John Doe I v. Unocal Corp., 2002 U.S. App. LEXIS 19263 (9th Cir. 2002) ("Unocal"); North South Finance, 100 F.3d at 1052.

Under the "conduct test," which is applied in transnational securities fraud cases, "subject matter jurisdiction exists only where conduct material to the completion of the fraud occurred in the United States." Giro, 1995 U.S. Dist. LEXIS 9673, at *7.  "[M]ere preparatory activities are insufficient to establish jurisdiction." Id.  "Under the alternative effects test, jurisdiction exists when there are substantial effects within the United States." Id. at *8.  In short, '[t]he 'conduct' test establishes jurisdiction for domestic conduct that directly causes foreign loss or injury.  Conversely, the 'effects' test establishes jurisdiction for foreign conduct that directly causes domestic loss or injury." Unocal at *81.

In North South Finance, the Second Circuit recognized that there are two versions of the "effects test"; one is applied in securities cases and one is applied in antitrust cases.  In the securities fraud context, the statute has "'extraterritorial reach whenever a predominantly foreign transaction has substantial effects within the United States.'  Transactions with only remote and indirect effects in the United States do not qualify as substantial." 100 F.3d at 1052 (citation

9

omitted).  In antitrust cases, "liability may attach to anticompetitive conduct occurring outside the United States, but have consequences here, if the conduct is intended to and actually does have an effect on United States imports or exports which the state reprehends."  Id.

The Complaint's Fifth Claim does not satisfy the "conduct test" and does not satisfy either formulation of the "effects test."  The Complaint does not allege any conduct by the Israeli Defendants or the Settler Defendants in the United States that was material to the harms claimed by plaintiffs.  Moreover, plaintiff John Doe II's claim, pursuant to 18 U.S.C. § 1964(c), to have been "injured in his business or property by reason of a violation of [18 U.S.C.] section 1962," does not allege any effect in the United States.  Under either the securities or the antitrust formulation of the "effects" test, there is no basis for applying the RICO Act here.  John Doe II claims that his West Bank farm land was taken and damaged.  He does not claim any substantial or direct effect to his "business or property" in the United States.  Nor is there any allegation that the Rinat Defendants' conduct was "intended to and actually [did] have an effect" in the United States.  See North South Finance, 100 F.3d at 1052.

Finally, the fact that plaintiff John Doe II claims to be a U.S. citizen does not, without more, give this Court jurisdiction under the RICO Act absent any other effect in the United States.  Indeed, in discussing whether securities purchases by "Americans resident abroad" were a basis for applying the federal securities laws to foreign sales of stock in a foreign corporation the Second Circuit has stated:

> "Whether Congress intended that [Americans resident abroad] should be entitled to obtain damages for violation of the securities laws is a different and closer question . . . .  We think the answer would be in the negative if none of the defendants engaged in significant activities within the United States . . . .  Congress surely

did not mean the securities laws to protect the many thousands of
Americans residing in foreign countries against securities frauds by
foreigners acting there, and we see no sufficient reason to believe it
would have intended otherwise simply because an American
participated so long as he had done nothing in the United States."

Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 992 (2d Cir. 1975).

Similarly, in Butte Mining PLC v. Smith, 876 F. Supp. 1153 (D. Mont. 1995),

aff'd, 76 F.3d 287 (9th Cir. 1996), the court dismissed, for lack of subject matter jurisdiction, a

shareholder derivative suit brought by Butte Mining, a UK corporation, alleging fraud in

connection with a public offering of its stock on the London Stock Exchange. The plaintiffs in

Butte invoked "effect-based jurisdiction predicated solely upon the . . . assertion . . . that Butte

Mining had United States Shareholders." Id. at 1164. The court held that the "attempt to invoke

effect-based jurisdiction" was "deficient" given the absence of any allegation "that offering

documents, issued in connection with the public offering were directed into the United States -- a

crucial requirement for the invocation of effect-based jurisdiction." Id.

Given that the Fifth Claim concerns allegations of extraterritorial conduct having

extraterritorial effect, the RICO Act plainly does not apply and the claim should be dismissed.

## POINT III

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE RINAT DEFENDANTS UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

**A.**    **The Fifth Claim For Relief Does Not State A Claim Against The Rinat Defendants Under 18 U.S.C. § 1962(b)**

18 U.S.C. § 1962(b) provides:

"It shall be unlawful for any person through a pattern of
racketeering activity or through collection of an unlawful debt to

> acquire or maintain, directly or indirectly, any interest in or control
> of any enterprise which is engaged in, or the activities of which
> affect, interstate or foreign commerce."

18 U.S.C.A. § 1962(b). "Under § 1962(b), a plaintiff must show that he suffered an injury from

a defendant's acquisition or control of an interest in the RICO enterprise, and that the defendant

must have acquired the control as a result of the racketeering activity." Browne v. Abdelhak,

2000 U.S. Dist. LEXIS 12064, at *29 (E.D. Pa. Aug. 23, 2000). Accord Danielsen v. Burnside-

Ott Aviation Training Center, 941 F.2d 1220, 1231 (D.C. Cir. 1991).

> 1.    **The Complaint does not allege that the Rinat**
>       **Defendants, in fact, acquired or maintained**
>       **any interest in or control of a RICO enterprise.**

In order for the Rinat Defendants to have violated § 1962(b), "it is necessary that

[they] acquired an interest in or control of" a RICO "enterprise." BCCI Holdings (Luxembourg),

S.A. v. Khalil, 56 F. Supp. 2d 14, 50 (D.D.C. 1999). "A § 1962(b) 'interest' in an enterprise is a

proprietary one. . . . '[I]nterest' in fact encompasses all 'property rights' in a business

enterprise." Id. at 51 (quoting United States v. Jacobson, 691 F.2d 110, 112-13 (2d Cir. 1982)).

Accord Welch Foods, Inc. v. Packer, 1996 U.S. Dist. LEXIS 951, at *5-6 (W.D. Mich. January 8,

1996). Furthermore, "[c]ontrol" of an enterprise, under § 1962(b), "means more than simply

being a manager or a corporate officer." Browne at *31-32. "The term 'control' refers to 'the

power gained over an enterprise's operations by acquiring such an interest." Welch Foods, at *6.

As alleged in the Complaint's Fifth Claim, the RICO "enterprise" was "an

association in fact" comprised of the Israeli Defendants, the Settler Defendants "and their agents

and coconspirators." (Complaint ¶ 458). Alternatively, the Complaint asserts that the RICO

"enterprise" was plaintiff "John Doe II's land." (Id. at ¶ 461). Yet, the Rinat Defendants are

alleged only to have contributed monies for use by Halamish. (Complaint ¶ 74). No facts are pleaded suggesting that the Rinat Defendants acquired or maintained a proprietary interest in or control of anything, much less an interest in or control of a RICO "enterprise." Simply put, the Fifth Claim does nothing more than "parrot" the language of § 1962(b). (See id. at ¶ 461).

In light of the fact that the Complaint is "entirely silent" and alleges no "facts in support" as to how the Rinat Defendants "acquired or maintained an interest in or control of the enterprise," plaintiffs' Fifth Claim should be dismissed at least as against the Rinat Defendants. See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 329-30 (6th Cir. 1999).

**2.      The Complaint does not allege a pattern of racketeering activity on the part of the Rinat Defendants.**

Plaintiff's Fifth Claim also fails to state a claim against the Rinat Defendants under § 1962(b) because it does not allege that they engaged in a "pattern of racketeering activity." As defined in 18 U.S.C. § 1961(5), a "pattern of racketeering activity" requires at least two acts of "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). While the Fifth Claim alleges predicate acts of attempted murder, threat of murder, arson and extortion (Complaint ¶ 465), there is no allegation that the Rinat Defendants themselves engaged in any such racketeering activity. Rather, the Rinat Defendants are alleged to have contributed monies for use by Halamish. In the absence of facts showing that the Rinat Defendants engaged in racketeering activity, the Fifth Claim should be dismissed as against the Rinat Defendants.

**3.      The Complaint does not allege the existence of a RICO "enterprise."**

Yet another fatal flaw in the Complaint's Fifth Claim is the lack of facts

supporting the allegation of a RICO "enterprise." For purposes of RICO, an "enterprise"

includes "any individual, partnership, corporation, association, or other legal entity, and any

union or group of individuals associated in fact although not a legal entity." 18 U.S.C.

§ 1961(4). The United States Supreme Court has stated that an enterprise "is proved by evidence

of an ongoing organization, formal or informal, and by evidence that the various associates

function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). The D.C.

Circuit has similarly held that an "enterprise is established by (1) a common purpose among the

participants, (2) organization, and (3) continuity." United States v. Richardson, 167 F.3d 621,

625 (D.C. Cir. 1999). Accord Hargraves v. Capital City Mortgage Corp., 140 F. Supp. 2d 7, 24

(D.D.C. 2000). Thus, "[t]he same group of individuals who repeatedly commit predicate

offenses do not necessarily comprise an enterprise. An extra ingredient is required:

organization." United States v. Perholtz, 842 F.2d 343, 363 (D.C. Cir. 1988) (emphasis added).

      The Complaint in this case alleges that "the Israeli Defendants and the Settler

Defendants, and their agents and coconspirators participated in a RICO 'enterprise,'" (Complaint

¶ 457), and, alternatively, that the same defendants "constituted an association in fact for a

common purpose with a continuous existence separate and apart from the pattern of racketeering

in which they engaged. This association [in] fact constituted an enterprise within the meaning of

18 U.S.C. § 1961(4)." (Id. at ¶ 458.) As mentioned above, in still another formulation, the

Complaint states that the RICO "enterprise" was plaintiff "John Doe II's land" and alleges that

defendants "acquired and maintained an interest" in the land. (Id. at ¶ 461.)

      However, plaintiffs' conclusory allegations merely recite the language of the

statute and fall far short of alleging the requisite "organization" or "structure" of the claimed

"enterprise." Plaintiffs conjure up, without factual support, a vast enterprise involving the State of Israel, its army, its intelligence agency, its political and military leadership, a West Bank community and far-flung financial supporters of that community. There is no hint of any structure or organization characteristic of an "enterprise."[5] Nor are there any factual allegations suggesting that the Rinat Defendants acquired or maintained an interest in John Doe II's land.

In sum, plaintiffs' "failure to plead facts identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise is fatal to their claim." Dodd v. Infinity Travel, 90 F. Supp. 2d 115, 117 (D.D.C. 2000). See also Scheck v. General Elec. Corp., 1992 U.S. Dist. LEXIS 134, at *9 (D.D.C. Jan. 7, 1992) ("'Plaintiffs in a RICO claim must plead specific facts, not merely conclusory allegations, which establish the enterprise'") (quoting Manax v. McNamara, 842 F.2d 808, 811 (5th Cir. 1998)).

**B.     The Fifth Claim Does Not State A Claim Against
The Rinat Defendants Under 18 U.S.C. § 1962(c)**

18 U.S.C. § 1962(c) provides:

> "It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities which affect, interstate
> or foreign commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs though a
> pattern of racketeering activity or collection of unlawful debt."

18 U.S.C.A. § 1962(c). The United States Supreme Court has stated that a violation of § 1962(c) thus requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

---

[5]     To the contrary, the Fifth Claim indicates that the Israeli Defendants and the Settler Defendants were acting at cross purposes with respect to John Doe II. Recounting a supposed October 2000 incident on John Doe II's land, the Complaint asserts that "[a]s the settlers, were about to torch his house, IDF troops arrived and dispersed them." (Complaint ¶ 253).

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  The Court observed that "[t]he plaintiff must, of course, allege each of these elements to state a claim."  Id.

### 1.     The Complaint does not allege that the Rinat Defendants "conducted or participated" in the conduct of the affairs of any RICO enterprise.

Plaintiff John Doe II's Fifth Claim fails to allege elements (1) and (2) of a § 1962(c) violation, as defined in Sedima.  As set forth above (Point I.A.3), the amorphous "enterprise" alleged by plaintiffs lacks the requisite "organization" or "structure" that defines a RICO "enterprise."

Furthermore, even if the Israeli Defendants and the Settler Defendants did, collectively, constitute an "enterprise," the Complaint does not allege that the Rinat Defendants engaged in the "conduct" of the enterprise, as required by § 1962(c).  In the context of § 1962(c), the Supreme Court has read "the word 'conduct' to require some degree of direction and the word 'participate' to require some part in that direction."  Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).  One is not liable under § 1962(c) "unless one has participated in the operation or management of the enterprise itself."  Id. at 183.

Again, the Complaint merely invokes the words of 18 U.S.C. § 1962(c). (Complaint ¶ 462).  Because the Complaint describes the Rinat Defendants only as contributing funds for use by Halamish, the Fifth Claim does not and cannot assert that the Rinat Defendants participated in the "operation or management" of the alleged RICO enterprise.  As the Court said in Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998):

> "'Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result.'  There is a 'substantial difference between actual control over an enterprise and association with an enterprise in ways that

do not involve control; only the former is sufficient under <u>Reves</u> because "the test is not involvement but control.'" . . . '[I]t is not the importance of such services that determines § 1962(c) liability, but whether the provision of those services allows the defendant to direct the affairs of the enterprise.'"

<u>Accord</u> <u>Lamb v. Pajtas</u>, 1994 U.S. Dist. LEXIS 5729, at *18 (W.D. Mich. April 1, 1994), <u>aff'd</u>

51 F.3d 272 (6th Cir. 1995). ("plaintiff has failed to allege that the majority of defendants

participated in the 'operation or management' of the RICO enterprise"). Accordingly, the Fifth

Claim does not state a claim against the Rinat Defendants under § 1962(c).

> **2.    Plaintiffs have not alleged that the Rinat
> Defendants engaged in racketeering activity.**

Plaintiffs' Fifth Claim also fails to state a claim against the Rinat Defendants

under § 1962(c) because, as set forth above in Point I.A., the Complaint does not allege that the

Rinat Defendants committed acts of racketeering activity and thus does not satisfy element (4) of

a § 1962(c) claim as defined by the Supreme Court in <u>Sedima</u>.

> **C.    The Fifth Claim Does Not State A Claim Against
> The Rinat Defendants Under 18 U.S.C. § 1962(d)**

The Fifth Claim also states no claim against the Rinat Defendants under 18 U.S.C.

§ 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions

of subsection (a), (b), or (c) of this section."

> **1.    Absent a RICO  Violation Under 18 U.S.C. § 1962(b) or (c),
> the Rinat Defendants cannot be held liable under § 1962(d).**

As shown above in Points II.A and II.B, plaintiff John Doe II's Fifth Claim does

not allege a RICO violation of §1962(b) or (c) because the Complaint does not allege a RICO

"enterprise." That failure dooms the Fifth Claim as against all of the defendants.  Because the

Fifth Claim does not state a claim against any of the defendants for violation of §1962(b) and (c),

the Complaint, as a matter of law, cannot state a claim against the Rinat Defendants, under

§ 1962(d), for conspiring to violate §§ 1962(b) or (c).  See Religious Tech. Ctr. v. Wollersheim,

971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that [plaintiff] has failed to allege the

requisite substantive elements of RICO, the conspiracy cause of action cannot stand"); Vicon

Fiber Optics Corp. v. Scrivo, 201 F. Supp. 2d 216, 221 (S.D.N.Y. 2002) ("Plaintiff's second

claim is for RICO conspiracy, in violation of 18 U.S.C. § 1962(d).  This claim fails because the

underlying substantive RICO cause of action has been dismissed);  Walsh v. America's Tele-

Network Corp., 195 F. Supp. 2d 840, 848 (E.D. Tex. 2002).

> ## 2.      The Fifth Claim does not allege an
> ## agreement involving the Rinat Defendants.

Even assuming, arguendo, that the Fifth Claim does state RICO claims against

other defendants under §§ 1962(b) or (c), the Fifth Claim should be dismissed as against the

Rinat Defendants for failing to allege that they entered into an agreement having an unlawful

objective.

In interpreting the term "to conspire," as used in § 1962(d), the Supreme Court

has concluded that "Congress intended to use the term in its conventional sense, and certain well-

established principles follow."  Salinas v. Untied States, 522 U.S. 52, 63 (1997).  The Court

pointed out that when Congress passed the RICO Act in 1970, the American Law Institute's

Model Penal Code "permitted a person to be convicted of conspiracy so long as he 'agrees with

such other person or persons that they or one or more of them will engage in conduct that

constitutes such crime.'"  Id. at 65.  The Supreme Court went on the explain that "[a] conspirator

must intend to further an endeavor which, if completed, would satisfy all of the elements of a

substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the

criminal behavior." Id. "The partners must agree to pursue the same criminal objective and may

divide up the work, yet each is responsible for the acts of each other." Id. at 63-64. Accord

BCCI Holdings (Luxembourg), S.A. v. Khalil, 56 F. Supp. 2d 14, 57 (D.D.C. 1999), aff'd and

rev'd in part, 214 F.3d 168 (D.C. Cir. 2000); see also Lamb v. Pajtas, 1994 U.S. Dist. LEXIS

5729 (W.D. Mich. 1994) (complaint "fail[ed] to state a claim under the conspiracy provision as

plaintiff has not alleged the existence of an agreement to commit the predicate acts of

racketeering"); Trautz v. Weisman, 819 F. Supp. 282, 289 (S.D.N.Y. 1993) ("At a minimum,

[plaintiff's] complaint must allege specifically an agreement. Vague, conclusory allegations

standing alone are insufficient."). As one court stated in dismissing a conspiracy claim under

§ 1962(d):

> "[A]lthough Plaintiffs have pled the conclusory allegation that
> Defendants 'conspired to commit their acts of racketeering fraud,'
> there is no allegation of the existence of an agreement to engage in
> conduct that would amount to a RICO violation. Plaintiffs have
> not alleged the elements of a conspiracy."

Fischbach v. Founders Court Inc., 1996 U.S. Dist. LEXIS 10125, at *25 (M.D.N.C. June 13,

1996).

Moreover, plaintiffs must plead details of the RICO conspiracy to survive a

motion to dismiss. See Miranda v. Ponce Federal Bank, 948 F. 2d 41, 48 (1st Cir. 1991) ("Here,

the conspiracy allegation is perfunctory. It fails to provide any specifics as to the details of the

alleged conspiracy or the predicate acts committed in the pursuit thereof. Like RICO claims

generally, . . . a RICO conspiracy claim that is alleged in wholly conclusory terms will not

withstand a motion to dismiss.").[6]

However, the Complaint does no more than recite the language of the statute, alleging in wholly conclusory terms that defendants "combined and conspired together and with their agents and coconspirators to conduct the affairs of the enterprise through a pattern of racketeering activity." (Complaint ¶ 463). The Complaint asserts that the Rinat Defendants provided funds "specifically earmarked for materials" that were allegedly "used by [Halamish] to illegally terrorize neighboring property owners and confiscate their land. and are coconspirators in the illegal acts of the enterprise." (Id. at ¶ 74). The Complaint does not plead that the Rinat Defendants entered into any "agreement" to pursue an unlawful objective.

Moreover, the Complaint alleges no facts from which an agreement to pursue an unlawful objective could reasonably be inferred. According to the Complaint the Rinat Defendants and  defendants One Israel Fund, Central Fund for Israel and Christ Lutheran Church contributed monies "for various military purposes, including dozens of bullet proof vests and body armor, night vision goggles, armored jeeps and ambulances, floodlights, ballistic helmets, communications equipment, gun cabinets, generators and even security fence repairs." (Complaint ¶111). Even assuming that the Rinat Defendants funded some such purchases, all of the equipment referred to in the Complaint can be used for self-protection, and without any aggressive purpose. It is therefore unreasonable, without more, to infer that the Rinat Defendants entered into an agreement aimed at terrorizing Palestinians.  In other words, alleging that the

---

[6]     The D.C. Circuit has "yet to decide whether the Reves 'operation or management' test also applies to RICO conspiracy." United States v. Hoyle, 122 F.3d 48, 50 n.3 (D.C. Cir. 1997).  This Court need not reach the issue to dismiss the Fifth Claim as against the Rinat Defendants.

Rinat Defendants contributed towards purchases of such equipment is a far cry from alleging the existence of an agreement by the Rinat Defendants that unidentified settlers would take a portion of John Doe II's land, threaten him with a rifle, shoot at his house and bulldoze his trees. (Id. at ¶¶ 248-55).

### D. The Complaint Does Not Allege That The Rinat Defendants Were A Proximate Cause Of John Doe II's Injuries.

Plaintiffs' Fifth Claim should also be dismissed as against the Rinat Defendants because the Complaint does not allege that the Rinat Defendants were a proximate cause of John Doe II's supposed injury.

Plaintiffs' claims for violation of 18 U.S.C. §§ 1962 (b)-(d) are brought under 18 U.S.C. § 1964(c) which states:

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

"A RICO plaintiff under 1964(c) must allege that a defendant's violation of § 1962 is the proximate cause of plaintiff's alleged injuries, which means 'some direct relation between the injury asserted and the injurious conduct alleged.'" Farmers and Merchants Nat'l Bank v. San Clemente Fin.Group Sec., Inc., 174 F.R.D. 572, 582 (D.N.J. 1997) (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)); see also Browning v. Clinton, 292 F.3d. 235, 249 (D.C. Cir. 2002) (dismissing RICO claim where plaintiff "pleads no facts suggesting 'some direct relation between the injury asserted and the injurious conduct alleged' -- in other words, proximate causation"); BCCI Holdings, 56 F. Supp. 2d at 60 ("Applying § 1964(c)'s

causation element to a § 1962(d) violation requires that the conspiracy, rather than the substantive RICO violation on the predicate acts, be the proximate cause of plaintiffs' injuries").

The Complaint does not allege that the Rinat Defendants were a proximate cause of John Doe II's injuries. All that the Rinat Defendants allegedly did was donate money for use by Halamish. There is no allegation that John Doe II was injured by even the <u>type</u> of equipment that the Rinat Defendants allegedly funded, much less by <u>particular pieces of equipment actually paid for</u> by the Rinat Defendants. Moreover, the Complaint alleges only that the materials allegedly funded by the Rinat Defendants and other defendants were used to "terrorize <u>Palestinians such as</u> John Doe II." (Complaint ¶ 112). (emphasis added). The implication is that the "materials" were used against some Palestinians, but not necessarily against John Doe II himself. Furthermore, the Complaint does not allege that John Doe II was harmed by Halamish - - to which the Rinat Defendants allegedly contributed funds. Rather, John Doe II claims to have been terrorized by "settlers" who, at most, were residents of Halamish. (<u>See id</u>. at ¶¶ 248-55).

In short, the Complaint does not plead that the Rinat Defendants' financial contributions for use by Halamish were a proximate cause of John Doe II's injuries.

## POINT IV

### ABSENT A RICO CLAIM, THIS COURT LACKS PERSONAL JURISDICTION OVER THE RINAT DEFENDANTS

**A.** **If The RICO Claim Is Dismissed The Court Should Not Exercise Pendent Personal Jurisdiction Over The Common Law Claims Asserted Against The Defendants**

Plaintiffs' only argument that this Court has personal jurisdiction over the Rinat Defendants is that (i) the RICO statute, 18 U.S.C. § 1965(b), allows for nationwide service of

process where there is a showing that the "ends of justice require" it; and (ii) the Court has

pendent personal jurisdiction over the Rinat Defendants with respect to the non-RICO claims.

Even assuming that plaintiffs make the showing required under § 1965(b), if the Court dismisses

John Doe II's RICO claim against the Rinat Defendants the Court will lack personal jurisdiction

over them with respect to the remaining claims and should dismiss those claims as against them.

See Olin Corp. v. Fisons PLC, 47 F. Supp. 2d 151, 155 (D. Mass. 1999); 4A C.A. Wright, et al.,

Fed. Prac. and Proc. § 1069.7 (3d ed.) ("Of course, if the only jurisdictionally sufficient claim is

dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim should

be dismissed as well"); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726

(1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial

in a jurisdictional sense, the state claims should be dismissed as well"); Network Prospect v.

Corporation for Public Broadcasting, 561 F.2d 963, 970 (D.C. Cir. 1977), ("when state and

federal claims are joined and the federal claims are dismissed before trial, the state claims should

ordinarily be dismissed as well"); Covad Communications Co. v. Bell Atlantic Corp., 201 F.

Supp. 2d 123, 135 (D.D.C. 2002) ("Because the Court has dismissed Plaintiffs' federal claims, it

declines to exercise supplemental jurisdiction over the state law claims").  Given that this case

has just begun and given that the Complaint does not even properly state an underlying RICO

claim against the Rinat Defendants, the common law claims against them should be dismissed

for lack of personal jurisdiction; this Court should not exercise pendent jurisdiction over those

claims.

**B.**   **The Rinat Defendants Have No Contacts With The District Of Columbia Which Would Justify This Court's Exercising Personal Jurisdiction Over Them**

This Court clearly does not have personal jurisdiction over the Rinat Defendants independent of the RICO claim.  In order "[t]o establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry:  A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Under the District of Columbia's long-arm statute, a court may exercise jurisdiction over a non-resident

"who acts directly or by an agent, as to a claim for relief arising from the person's --

(1)     transacting any business in the District of Columbia;

(2)     contracting to supply services in the District of Columbia;

(3)     causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)     causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5)     having an interest in, using, or possessing real property in the District of Columbia;

(6)     contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7)     marital or parent and child relationship in the District of Columbia . . . ."

D.C. Code § 13-423(a).  Moreover, pursuant to D.C. Code § 423(b), "when jurisdiction over a person is based solely on [the long-arm statute] only a claim for relief arising from acts enumerated in this section may be asserted against him."  Because the Rinat Defendants do not have any of the enumerated contacts with the District of Columbia (see Adler Decl. ¶¶ 2-4 and Hiller Decl., ¶¶ 2-4) and because plaintiffs' claims against the Rinat Defendants indisputably do not arise out of any contacts with the District, this Court should dismiss the common law claims as against the Rinat Defendants under Fed. R. Civ. P. 12(b)(2).

Even if the District of Columbia long-arm statute did literally apply to plaintiffs' claim against the Rinat Defendants, this Court could not exercise personal jurisdiction over the Rinat Defendants consistent with standards of constitutional due process.  See Marshall v. Labor and Indus., State of Washington, 89 F. Supp. 2d 4, 9 (D.D.C. 2000) ("Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must also show that the exercise of personal jurisdiction is within the permissible bounds of the due process clause."); Novak-Canzeri v. Saud, 864 F. Supp. 203, 204-205 (D.D.C. 1994) ("A federal court may exercise personal jurisdiction over a non-resident defendant only when service of process is authorized by statute and only when consistent with due process of law.").

For both corporate and individual defendants, the Supreme Court's due process standards are relatively straightforward.  "Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" <u>Helicopteros Nacionales de Colom., S.</u> <u>A. v. Hall</u>, 466 U.S. 408, 414 (1984) (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945), quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)); <u>see also</u> <u>Jungquist v. Al</u> <u>Nahyan</u>, 115 F.3d 1020, 1031 (D.C. Cir. 1997).

      The Rinat Defendants have never had any contacts with the District that would make this Court's exercise of personal jurisdiction over them consistent with "traditional notions of fair play and substantial justice." Because the District of Columbia's long-arm statute does not apply and because the exercise of personal jurisdiction over plaintiffs would be unconstitutional, this Court should dismiss plaintiffs' common law claims against the Rinat Defendants if it dismisses the RICO claim.

**POINT V**

**THE COMPLAINT FAILS TO STATE COMMON LAW** <br> **<u>TORT CLAIMS AGAINST THE RINAT DEFENDANTS</u>**

      Even if this Court concludes that it has personal jurisdiction over the Rinat Defendants with respect to plaintiffs' non-RICO claims, those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Although the Complaint purportedly asserts common law claims against the Rinat Defendants for battery, assault, intentional and negligent infliction of emotional distress, negligence per se, trespass and conversion (Complaint ¶¶ 510-14, 520-57), the Complaint plainly fails to allege necessary elements of each and every one of those claims. Simply stated, the Rinat Defendants reside in the United States, and there is no allegation that they had any contact with the Palestinian plaintiffs. Nor does the Complaint state a conspiracy claim that would make the Rinat Defendants vicariously liable for the acts of those persons who

did allegedly injure plaintiffs.

### A.   The Complaint Fails To Allege Necessary Elements Of The Asserted Common Law Tort Claims

Alleging merely that the Rinat Defendants contributed monies for use by Halamish, the Complaint most certainly does not claim that the Rinat Defendants directly harmed plaintiffs. Principal elements of each common law tort asserted in the Complaint are <u>not</u> alleged by plaintiffs with respect to the Rinat Defendants.[7]

### 1.   Battery (Eleventh Claim)

Under District of Columbia law, "once a plaintiff carries the burden of showing an intentional, unpermitted, harmful or offensive contact with his person or something attached to it, he has proved a technical battery." <u>Marshall v. District of Columbia</u>, 391 A.2d 1374, 1380 (D.C. 1978); <u>see also</u> <u>Rogers v. Loews L'Enfant Plaza Hotel</u>, 526 F. Supp. 523, 529 (D.D.C. 1981); Restatement (Second) of Torts § 18 (1965). The plaintiffs have alleged only that the Rinat Defendants contributed money; plaintiffs have not alleged that the Rinat Defendants actually committed an intentional, unpermitted, harmful, or offensive contact with the plaintiffs who assert the Eleventh Claim for Relief. (<u>See</u> Complaint ¶¶ 510-14.)

---

[7]   In pleading the seven common law claims asserted against the Rinat Defendants the Complaint invokes "the laws of Washington D.C." and "the laws of the United States." (Complaint ¶¶ 512, 522, 529, 539, 544, 549 and 555). As to five of the claims, the Complaint also invokes the laws of New York, Florida, South Carolina, Ohio, Nevada and Alabama. Given that the Rinat Defendants are New Jersey residents who have allegedly caused harm to Palestinians in an area that is the subject of continuing dispute between Israel and the Palestinians, the basis for plaintiffs' choice of law allegations is unclear. For purposes of challenging the Complaint, as pleaded, we assume here that District of Columbia law applies. However, in the event that this case is allowed to proceed, the Rinat Defendants reserve the right to argue that the law of another jurisdiction should apply.

2.      **Assault** **(Thirteenth Claim)**

District of Columbia law provides that "[o]ne can be subject to liability to another

for assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the

other or a third person, or an imminent apprehension of such a contact, and (b) the other is

thereby put in such imminent apprehension." Rogers v. Loews L'Enfant Plaza Hotel, 526 F.

Supp. 523, 529 (D.D.C. 1981) (Restatement (Second) of Torts § 21 (1979) and citing Madden v.

D.C. Transit System, Inc., 307 A.2d 756, 757 (D.C. 1973)).  The Complaint does not allege that

the Rinat Defendants acted with intent to cause a harmful or offensive contact with  any of the

plaintiffs or that the Rinat Defendants actually caused any of the plaintiffs imminent

apprehension of an offensive contact.  (See Complaint at ¶¶ 520-24).

3.      **Intentional Infliction of Emotional Distress**  **(Fourteenth Claim)**

There can be recovery for intentional infliction of emotional distress under

District of Columbia law only where a plaintiff demonstrates that a "tortfeasor's conduct is

wanton, outrageous in the extreme, or especially calculated to cause serious mental distress."

Shewmaker v. Minchew, 504 F. Supp. 156, 163 (D.D.C. 1980), aff'd, 666 F.2d 616 (D.C. Cir.

1981) (citing Restatement (Second) of Torts § 46 (1965)); see also Harvey v. Strayer Coll., 911

F. Supp. 24, 27 (D.D.C. 1996) (describing required elements of outrageous conduct, intent to

cause emotional harm, and actual causation).

Alleging only that the Rinat Defendants donated money for use by Halamish, the

Complaint does not describe any "outrageous in the extreme" conduct by the Rinat Defendants.

Moreover, because the Rinat Defendants were geographically far removed from the plaintiffs,

there is no suggestion that the Rinat Defendants intended to cause emotional harm to plaintiffs or

could actually have caused emotional harm to plaintiffs.  As described in the Complaint, the

conduct of the Rinat Defendants did not directly harm the plaintiffs.

### 4.   Negligent Infliction of Emotional Distress (Fifteenth Claim)

Under District of Columbia law, in order to recover damages for negligent

infliction of emotional distress, a plaintiff must prove that he or she was placed in a zone of

physical danger as a result of a defendant's negligence and feared for his or her safety.  See

Brown v. Argenbright Sec. Inc., 782 A.2d 752, 760 (D.C. 2001) (citing Williams v. Baker, 572

A.2d 1062, 1067 (D.C. 1990)) (emphasis added).  "Furthermore, 'in a negligent infliction case,

there can be recovery for mental and emotional distress only if the plaintiff's injuries are 'serious

and verifiable.'"  Id. at 761 (quoting Bahura v. S.E.W. Investors, 754 A.2d 928, 937 (D.C.

2000)).

The Complaint never alleges that the Rinat Defendants put plaintiffs in a zone of

danger.  (See Complaint ¶¶ 532-41.)  Nowhere does the Complaint claim that the Rinat

Defendants caused "serious and verifiable" injuries—emotional or otherwise—to the plaintiffs.

Even in the case of John Doe II, the Complaint states that "[a]s a result of the attacks [on his

property], John Doe II and his family have been severely traumatized."  (Id. at ¶ 256.) (emphasis

added).  In other words, the Complaint does not allege that acts of the Rinat Defendants caused

John Doe II's emotional injuries.

### 5.   Negligence (Sixteenth Claim)

In the District of Columbia, a plaintiff asserting a claim for negligence must prove

duty, breach of that duty, causation, and damages flowing from the defendant's breach.  See

Williams v. Baker, 572 A.2d 1062, 1064 (D.C. 1990) (en banc).  Yet, plaintiffs fail to allege any

facts suggesting that the Rinat Defendants had a duty toward any of the plaintiffs, how the Rinat Defendants breached that duty of care or how the Rinat Defendants' supposed breach of duty caused any of the plaintiffs' injuries.

### 6.   Trespass (Seventeenth Claim)

The courts of this district have defined the tort of trespass as "an invasion of the interest in the exclusive possession of land." National Tel. Coop. Ass'n v. Exxon Corp., 38 F. Supp. 2d 1, 12 (D.D.C. 1998). "The touchstone of trespassory intent is a volitional action to be present on the property. It does not suffice merely to establish that the defendant acted in a manner that somehow resulted in an invasion of the plaintiff's property." Id. at 12; see also Restatement (Second) of Torts § 158 (1965).

Accordingly, plaintiffs have not pleaded a claim of trespass against the Rinat Defendants. The Complaint simply does not describe an invasion of plaintiffs' property by the Rinat Defendants. Absent an actual invasion of land by the Rinat Defendants, plaintiffs' trespass claim against the Rinat Defendants is not legally sound. See Dine v. Western Exterminating Co., 1988 U.S. Dist. LEXIS 4745, at *27-28 (D.D.C. Mar. 9, 1988) ("In the present case, [defendant] took no action, intentional or otherwise, that directly caused a physical invasion of plaintiffs' interest in the exclusive possession of their land. . . . Thus, plaintiffs fail to state a claim against [defendant] upon a theory of trespass.").

### 7.   Conversion (Eighteenth Claim)

Under District of Columbia law, a "defendant will be liable for conversion if the plaintiff shows that the defendant participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of

that person's rights thereto." <u>Rwanda v. Rwanda Working Group</u>, 2002 U.S. Dist. LEXIS 16132 at *38 (D.D.C. Aug. 27, 2002).  However, plaintiffs have not alleged that the Rinat Defendants exercised ownership, dominion, or control over the plaintiffs' property.  (<u>See</u> Complaint ¶¶ 552-57).

In sum, the Complaint alleges only that the Rinat Defendants contributed money to Halamish.  As described in the Complaint, the Rinat Defendants had no contact or relationship with plaintiffs and did not directly cause plaintiffs harm.  Consequently, plaintiffs' common law tort claims against the Rinat Defendants should be dismissed.

**B.      The Complaint Fails To Allege That The Rinat
        <u>Defendants Were A Part Of A Civil Conspiracy</u>**

Plaintiffs also fail to allege the elements of a conspiracy involving the Rinat Defendants which would allow plaintiffs to hold them liable for common law torts allegedly carried out by other defendants.  Indeed, District of Columbia law defines the elements of civil conspiracy to include:

> "(1) an agreement between two or more persons;
>
> (2)  to participate in an unlawful act, or a lawful act in an unlawful manner;
>
> (3)  an injury caused by an unlawful overt act performed by one of the parties to the agreement;
>
> (4) which overt act was done pursuant to an in furtherance of the common scheme."

<u>Halberstam v. Welch</u>, 705 F. 2d 472, 477 (D.C. Cir. 1983); <u>see also</u> <u>Hall v. Clinton</u>, 285 F.3d 74, 83 (D.C. Cir. 2002); <u>Sturdza v. United Arab Emirates</u>, 281 F.3d 1287, 1306 (D.C. Cir. 2002) ("In the District of Columbia, 'a cause of action for civil conspiracy must allege the formation and

operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result'").[8]

Plaintiffs must allege specific facts showing the formation of an agreement among the alleged conspirators. See Paul v. Howard University, 754 A.2d 297, 310 (D.C. Ct. App. 2000) (affirming summary judgment where plaintiff "made several conclusory statements in her complaint that appellees had engaged in a conspiracy against her, she alleged no specific facts to support these assertions, and the record contain[ed] no actual evidence of an agreement between or among any of the appellees to commit an unlawful act"); Griva v. Davison, 637 A.2d 830, 848 (D.C. 1994) ("Griva has not successfully alleged a civil conspiracy. Griva does not allege any agreement, and she does not claim actual damages").

However, the Complaint does not allege that the Rinat Defendants entered into an agreement to participate in unlawful conduct. The Complaint does not say with whom the Rinat Defendants agreed or to what they agreed. Moreover, as mentioned above (Point II.C.2), the allegation that the Rinat Defendants funded purchases of apparently defensive equipment does not, without more, support a reasonable inference that the Rinat Defendants were parties to an agreement with an unlawful objective. In the absence of allegations that the Rinat Defendants entered into an agreement to engage in unlawful conduct, plaintiffs fail to state a claim against

---

[8]     The law of conspiracy is no different under New Jersey law. See Nicholas v. Saul Stone & Co., 1998 U.S. Dist. LEXIS 22977 (D.N.J. 1998) ("A civil conspiracy is a 'combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage.'"); State of New Jersey v. Carbone, 91 A.2d 571, 574 (N.J. 1952) ("At common law, a conspiracy consists not merely in the intention but in the agreement of two or more persons . . . to do an unlawful act, or to do a lawful act by unlawful means.").

the Rinat Defendants for conspiracy to engage in any of the common law torts listed in the Complaint.

## CONCLUSION

Based on the foregoing, the Rinat Defendants' motion to dismiss should be granted. Plaintiffs' Fifth Claim, alleging a violation of the RICO Act, should be dismissed as against the Rinat Defendants for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Plaintiffs' Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth and Eighteenth claims asserting common law torts claims should be dismissed as against the Rinat Defendants for lack of personal jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

Dated: November ___, 2002                    Respectfully submitted,


                                             _____
                                             David O. Bickart (355313)
                                             KAYE SCHOLER LLP
                                             The McPherson Building
                                             901 Fifteenth Street, N.W, Suite 1100
                                             Washington, DC  20005-2327
                                             (202) 682-3500

                                             Aaron Stiefel
                                             KAYE SCHOLER LLP
                                             425 Park Avenue
                                             New York, NY 10022
                                             (212) 836-8000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Rinat Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    The Alleged Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Allegations of John Doe II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Allegations Regarding The Rinat Defendants . . . . . . . . . . . . . . . . . . . . . 7

    The Claims Asserted Against The Rinat Defendants . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT I

THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER JOHN DOE II'S RICO
    CLAIM AGAINST THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II

THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE RINAT DEFENDANTS
    UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
    ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    The Fifth Claim For Relief Does Not State A Claim Against
            The Rinat Defendants Under 18 U.S.C. § 1962(b) . . . . . . . . . . . . . . . . . 11

            1.    The Complaint does not allege that the Rinat
                Defendants, in fact, acquired or maintained
                any interest in or control of a RICO enterprise . . . . . . . . . . . . . 12

            2.    The Complaint does not allege a pattern of racketeering
                activity on the part of the Rinat Defendants. . . . . . . . . . . . . . . . 13

3. The Complaint does not allege the existence of a RICO "enterprise." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B. The Fifth Claim Does Not State A Claim Against The Rinat Defendants Under 18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . 15

1. The Complaint does not allege that the Rinat Defendants "conducted or participated" in the conduct of the affairs of any RICO enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2. Plaintiffs have not alleged that the Rinat Defendants engaged in racketeering activity. . . . . . . . . . . . . . . . . 17

C. The Fifth Claim Does Not State A Claim Against The Rinat Defendants Under 18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . 17

1. Absent a RICO  Violation Under 18 U.S.C. § 1962(b) or (c), the Rinat Defendants cannot be held liable under § 1962(d) . . . . 17

2. The Fifth Claim does not allege an agreement involving the Rinat Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

D. The Complaint Does Not Allege That The Rinat Defendants Were A Proximate Cause Of John Doe II's Injuries. . . . . . . . . . . . . . . . 21

POINT III

ABSENT A RICO CLAIM, THIS COURT LACKS PERSONAL JURISDICTION OVER THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A. If The RICO Claim Is Dismissed The Court Should Not Exercise Pendent Personal Jurisdiction Over The Common Law Claims Asserted Against The Defendants  . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B. The Rinat Defendants Have No Contacts With The District Of Columbia Which Would Justify This Court's Exercising Personal Jurisdiction Over Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

POINT IV

THE COMPLAINT FAILS TO STATE COMMON LAW TORT CLAIMS AGAINST THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A.    The Complaint Fails To Allege Necessary Elements
      Of The Asserted Common Law Tort Claims . . . . . . . . . . . . . . . . . . . . . . 27

      1.    Battery (Eleventh Claim) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      2.    Assault (Thirteenth Claim)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      3.    Intentional Infliction of Emotional Distress  (Fourteenth Claim)  28

      4.    Negligent Infliction of Emotional Distress (Fifteenth Claim) . . . 29

      5.    Negligence (Sixteenth Claim) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      6.    Trespass (Seventeenth Claim) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      7.    Conversion (Eighteenth Claim) . . . . . . . . . . . . . . . . . . . . . . . . . 30

B.    The Complaint Fails To Allege That The Rinat
      Defendants Were A Part Of A Civil Conspiracy . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

## CASES

**Page**

Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n., 176 F.3d 315
(6th Cir. 1999) ...................................................................................................... 13

Alfadda v. Fenn, 935 F.2d 475 (2d Cir. 1991) ........................................................ 9

Bahura v. S.E.W. Investors, 754 A.2d 928 (D.C. 2000) ......................................... 29

Baker v. Carr, 369 U.S. 186 (1962) ......................................................................... 4

*BCCI Holdings (Luxembourg), S.A. v. Khalil, 56 F. Supp. 2d 14 (D.D.C.
1999) ............................................................................................................ 12, 19, 21

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir. 1975) ............................. 11

Brown v. Argenbright Sec. Inc., 782 A.2d 752 (D.C. 2001) ................................. 29

Browne v. Abdelhak, 2000 U.S. Dist. LEXIS 12064 (E.D. Pa. Aug. 23, 2000) ................... 12

Browning v. Clinton, 292 F.3d 235 (D.C. Cir. 2002) ........................................... 21

Butte Mining PLC v. Smith, 876 F. Supp. 1153 (D. Mont. 1995), aff'd, 76 F.3d 287
(9th Cir. 1996) ...................................................................................................... 11

Covad Communications Co. v. Bell Atlantic Corp., 201 F. Supp. 2d 123 (D.D.C.
2002) ...................................................................................................................... 23

Danielsen v. Burnside-Ott Aviation Training Center, 941 F.2d 1220 (D.C. Cir. 1991) ........ 12

Dine v. Western Exterminating Co., 1988 U.S. Dist. LEXIS 4745 (D.D.C. Mar. 9, 1988) .. 30

Dodd v. Infinity Travel, 90 F. Supp. 2d 115, 117 (D.D.C. 2000) .......................... 15

Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528 (D.C. Cir. 1993) ..................... 8

Farmers and Merchants Nat'l Bank v. San Clemente Fin.Group Sec. Inc., 174 F.R.D. 572
(D.N.J. 1997) ........................................................................................................ 21

Fischbach v. Founders Court Inc., 1996 U.S. Dist. LEXIS 10125 (M.D.N.C. June 13,
1996) ...................................................................................................................... 19

GTE New Media Services Inc. v. Bell South Corp., 199 F.3d 1343 (D.C. Cir. 2000) .......... 24

*Giro v. Banco Espanol de Credito, S.A., 1999 U.S. Dist. LEXIS 9673 (S.D.N.Y. 1999),
    aff'd 208 F.3d 203 (2d Cir. 2000) ................................................................... 9

Griva v. Davison, 637 A.2d 830 (D.C. 1994) ............................................................ 32

*Halberstam v. Welch, 705 F. 2d 472 (D.C. Cir. 1983) ............................................ 32

Hall v. Clinton, 285 F.3d 74 (D.C. Cir. 2002) ......................................................... 32

Hargraves v. Capital City Mortgage Corp., 140 F. Supp. 2d 7 (D.D.C. 2000) ................ 14

Harvey v. Strayer Coll., 911 F. Supp. 24 (D.D.C. 1996) .......................................... 28

Helicopteros Nacionales de Colomb., S.A. v. Hall, 466 U.S. 408 (1984) ...................... 26

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258 (1992) ........................................ 21

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ....................................... 26

John Doe I v. Unocal Corp., 2002 U.S. App. LEXIS 19263 (9th Cir. 2002) .................... 9

Junquist v. Al Nahyan, 115 F.3d 1020 (D.C. Cir. 1997) ........................................... 26

Lamb v. Pajtas, 1994 U.S. Dist. LEXIS 5729 (W.D. Mich. April 1, 1994), aff'd 51 F.3d
    272 (6th Cir. 1995) .......................................................................... 17, 19

Madden v. D.C. Transit System, Inc., 307 A.2d 756 (D.C. 1973) ................................ 28

Manax v. McNamara, 842 F.2d 808 (5th Cir. 1998) .................................................. 15

Marshall v. District of Columbia, 391 A.2d 1374 (D.C. 1978) .................................... 27

Marshall v. Labor  and Indus., State of Washington, 89 F. Supp. 2d 4 (D.D.C. 2000) .......... 25

Milliken v. Meyer, 311 U.S. 457 (1940) ................................................................. 26

Miranda v. Ponce Federal Bank, 948 F. 2d 41 (1st Cir. 1991) .................................... 19

National Tel. Coop. Ass'n v. Exxon Corp., 38 F. Supp. 2d 1 (D.D.C. 1998) .................... 30

Network Prospect v. Corporation for Public Broadcasting, 561 F.2d 963 (D.C. Cir.
    1977) ............................................................................................ 23

Nicholas v. Saul Stone & Co., 1998 U.S. Dist. LEXIS 22977 (D.N.J. 1998) .................... 32

*North South Finance Corp. v. Al-Turki, 100 F.3d 1046 (2d Cir. 1996) .................... 9, 10, 11

Novak-Canzeri v. Saud, 864 F. Supp. 203 (D.D.C. 1994) .................... 26

Olin Corp. v. Fisons PLC, 47 F. Supp. 2d 151 (D. Mass. 1999) .................... 23

Paul v. Howard University, 754 A.2d 297 (D.C. Ct. App. 2000) .................... 32

Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364 (9th Cir. 1992) .................... 18

*Reves v. Ernst & Young, 507 U.S. 170 (1993) .................... 16

Rogers v. Loews L'Enfant Plaza Hotel, 526 F. Supp. 523 (D.D.C. 1981) .................... 27, 28

Rwanda v. Rwanda Working Group, 2002 U.S. Dist. LEXIS 16132 (D.D.C. Aug. 27, 2002) .................... 31

Salinas v. Untied States, 522 U.S. 52 (1997) .................... 18

Scheck v. General Elec. Corp., 1992 U.S. Dist. LEXIS 134 (D.D.C. Jan. 7, 1992) .............. 15

*Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) .................... 16

Shewmaker v. Minchew, 504 F. Supp. 156 (D.D.C. 1980), aff'd, 666 F.2d 616 (D.C. Cir. 1981) .................... 28

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) .................... 16

State of New Jersey v. Carbone, 91 A.2d 571 (N.J. 1952) .................... 32

Sturdza v. United Arab Emirates, 281 F.3d 1287 (D.C. Cir. 2002) .................... 32

Trautz v. Weisman, 819 F. Supp. 282 (S.D.N.Y. 1993) .................... 19

United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) .................... 23

United States v. Hoyle, 122 F.3d 48 (D.C. Cir. 1997) .................... 20

United States v. Jacobson, 169 F.2d 110 (2d Cir. 1982) .................... 12

United States v. Perholtz, 842 F.2d 343 (D.C. Cir. 1988) .................... 15

United States v. Richardson, 167 F.3d 621 (D.C. Cir. 1999) .................... 14

*United States v. Turkette, 452 U.S. 576 (1981) .................... 14

<u>Vicon Fiber Optics Corp. v. Scrivo</u>, 201 F. Supp. 2d 216 (S.D.N.Y. 2002) .......................... 18

<u>Walsh v. America's Tele-Network Corp.</u>, 194 F. Supp. 2d 840 (E.D. Tex. 2002) ............... 18

<u>Welch Foods, Inc. v. Packer</u>, 1996 U.S. Dist. LEXIS 951 (W.D. Mich. January 8, 1996) ... 12

<u>Williams v. Baker</u>, 572 A.2d 1062 (D.C. 1990) ..................................................... 29

## STATUTES AND RULES

18 U.S.C. § 1961(1) ...................................................................................... 13

18 U.S.C. § 1961(4) ...................................................................................... 14

18 U.S.C. § 1961(5) ...................................................................................... 13

*18 U.S.C. § 1962(b) ...................................................... 3, 7, 11, 12, 13, 17, 18, 21

*18 U.S.C. § 1962(c) ........................................................ 3, 7, 15, 16, 17, 18, 21

*18 U.S.C. § 1962(d) ...................................................................... 3, 17, 18, 19, 21

18 U.S.C. § 1964(c) ...................................................................... 3, 7, 10, 21

18 U.S.C. § 1965(b) ...................................................................... 3, 22, 23

D.C. Code § 13-423(a) .................................................................................. 25

D.C. Code § 13-423(b) .................................................................................. 25

*Fed. R. Civ. P. 12(b)(1) ...................................................... 1, 2, 8, 25, 27

*Fed. R. Civ. P. 12(b)(2) ................................................................ 1, 2, 25

*Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 2, 3, 26

Restatement (Second) of Torts § 18 (1965) ...................................................... 27

Restatement (Second) of Torts § 46 (1965) ...................................................... 28

Restatement (Second) of Torts § 158 (1965) .................................................... 30

## TREATISES

4A. C.A. Wright, <u>et al.</u>, <u>Fed. Prac. and Proc.</u> § 1069.7 (3d ed.) .............................................. 23