UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| John Doe I, et al, | ) | |
| Plaintiffs, | ) ) ) | C.A. No. 1:02CV01431 (JDB) |
| vs. | ) ) | |
| State of Israel, et al, | ) ) | |
| Defendants. | ) ) | |

**DEFENSE CONTRACTORS' REPLY
BRIFF IN RESPONSE TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

  Defendants The Boeing Company, McDonnell Douglas Helicopter Corporation, Textron Inc., Bell Helicopter Textron Inc., Colt's Manufacturing Company, Inc., Glen E. Hess, John R. Murphy, Lewis B. Campbell, Phillip Condit, and Lt. General (Ret.) William M. Keys (collectively, "the Defense Contractors"), hereby reply to the Plaintiffs' Opposition to the Defense Contractors' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1).

  Plaintiffs' opposition is filled with concessions, the sum total of which are fatal to Plaintiffs' case against the Defense Contractors. Plaintiffs do not dispute: that strong financial and military support of Israel has been a cornerstone of U.S. foreign policy in the Middle East for the last 50 years; that a complex procurement regulatory scheme exists that requires multiple layers of review by the Executive and Legislative branches before the federal government will authorize the provision of military equipment to any foreign nation; and that these procurement requirements were met before any of the military equipment at issue was made available to the Israeli government, either by the Defense Contractors or by the federal government itself. Thus,

Plaintiffs essentially admit that this case revolves around political questions outside the competence of the federal courts.

Plaintiffs claim that they "do not ask or expect this Court or any other Court to change American policy.  That change must come from the political branches."  Plaintiff's Opposition to Federal Defendants' Motion to Dismiss, at 3.  It would seem that Plaintiffs have conceded their case, given that their Complaint asserts Plaintiffs' desire to effect that change.  See, e.g., Complaint, ¶ 225 ("all military assistance to Israel must be terminated").  Notwithstanding this rhetoric, however, the gist of Plaintiffs' opposition is to encourage the Court to judicially manage and control U.S. foreign policy – a state of affairs that courts have squarely rejected.  See, e.g., Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1513 (D.C. Cir. 1984) (acknowledging the need to avoid the "specter of judicial control and management of United States foreign policy"), vacated and remanded on other grounds, 471 U.S. 1113 (1985).

As to their claims against the Defense Contractors, Plaintiffs most importantly concede that, for such claims to proceed, the Court will have to examine and determine at the outset whether "Israel's conduct toward Plaintiffs violate[d] nondelegable norms of international law" through Israel's use of the military equipment manufactured by the Defense Contractors.  Opposition, at 7.  Such judicial review of a foreign sovereign's conduct, notably a key ally that has received long-standing support from the political branches of the federal government, runs afoul of both the "political question" doctrine and "act of state" doctrine.

Plaintiffs' opposition exults rhetoric over reasoning, in many instances simply "turning a blind eye" – and asking this Court to do the same – to the legal principles underpinning the political question and act of state doctrines set forth in the Defense Contractors' motion and

supported by relevant case law.[1]  For example, Plaintiffs failed to mention, address, or distinguish in any way the recent decision in Mahorner v. Bush, 224 F. Supp.2d 48 (D.D.C. 2002), aff'd, No. 02-5335, 2003 WL 349713 (Feb. 12, 2003).  In that case, which was described in detail in the Defense Contractors' motion to dismiss, the Honorable Reggie Walton of this court sua sponte dismissed a similar attempt to preclude military aid to Israel, holding in part that "the plaintiff's claims concerning the Executive Branch's ability to conduct both military and foreign affairs are non-justiciable political questions." Id. at 53.  The Mahorner decision, together with other established case law, mandates dismissal of this case for the grounds set forth herein and in the Defense Contractors' Motion to Dismiss.

Plaintiffs also claim that the political question and act of state doctrines do not apply in this matter because they allege claims under the Alien Tort Claims Act ("ATCA") and Torture Victims Protection Act ("TVPA").  Plaintiffs assert that there are no cases in which a court has used those doctrines to dismiss an action brought under the ATCA, 28 U.S.C. sec. 1350 or the TVPA, 28 U.S.C. sec. 1350 note.  Plaintiffs' Opposition, at 30.  Plaintiffs simply are incorrect.[2]  For example, this court dismissed the United Kingdom from an ATCA action on act of state

---

[1] To the extent that this suit has been brought less for its merits and more as a "public statement of protest," Plaintiffs have chosen the wrong forum.  See Saltany v. Reagan, 886 F.2d 438, 440 (D.C. Cir. 1989) (courts are a forum for serious disputes founded in the law, not for "public statements of protest").

[2] Plaintiffs also blindly presume that the ATCA gives rise to a cause of action for violation of international norms of conduct.  This Circuit has never reached such a conclusion.  Only a few days ago, one of the members of the Court of Appeals reviewed the history of 28 U.S.C. § 1350 and concluded that it did not give rise to such a cause of action.  See Al Odah v. United States, No. 02-5251 (D.C. Cir. Mar. 11, 2003) (Randolph, J., concurring).  "To have federal courts discover [customary international law] among the writings of those considered experts in international law and in treaties the Senate may or may not have ratified is anti-democratic and at odds with principles of separation of powers." Id. at 5.

grounds, characterizing the challenged decision to permit U.S. military forces to use British air bases as staging areas for air strikes as "an archetypal act of state." See Saltany v. Reagan, 702 F. Supp. 319, 320-21 (D.D.C. 1988), aff'd in relevant part, 886 F.2d 438 (D.C. Cir. 1989).  This court also has relied on the political question doctrine to dismiss a claim, based in part on the ATCA, that Japan was liable for damages to foreign women who were forced to serve as "comfort women" during World War II.  Hwang Geum Joo v. Japan, 172 F. Supp.2d 52 (D.D.C. 2001).

In yet another case, an ATCA action was brought against an international mining group, the actions of which were alleged to have incited civil war in Papua New Guinea.  The district court dismissed the case, in part based upon the political question doctrine, holding that resolution necessarily would require passing judgment on a foreign government and affecting the foreign policy objectives of U.S. executive branch.  See Sarei v. Rio Tinto PLC, 221 F. Supp.2d 1116, 1198-99 (C.D. Cal. 2002).  Thus, not only have the Plaintiffs failed to address the case law cited in the Defense Contractors' Motion to Dismiss, but also they have made statements regarding the controlling law that are simply wrong.  This Court should apply these well-established principles of law and dismiss this action against the Defense Contractors.

I.   **ADJUDICATION OF PLAINTIFFS' ACTION AGAINST THE DEFENSE CONTRACTORS NECESSARILY REQUIRES AN EVALUATION OF ISRAEL'S CONDUCT**

The various causes of action against the Defense Contractors all turn upon the conduct of Israel.  The essence of the claims is that the Defense Contractors "provided Israel weapons which were designed for urban assault and which the manufacturers knew or reasonably should have known were being used in offensive actions against civilian populations . . . in violation of international and U.S. law."  Complaint, ¶ 82.  In brief, Plaintiffs allege that the Defense

Contractors provided military equipment to Israel even though they "knew" that Israel was violating international law in its use of such weapons.

Consequently, before it could assess any potential liability of the Defense Contractors for providing military equipment to Israel under the theories set forth in the Complaint, the Court must make a threshold determination that the actions of Israel and its use of that equipment were illegal and invalid. Plaintiffs concede the need for such a determination. See Opposition, at 7. Only after the Court determines whether Israel's conduct violated international law could the Court consider whether the Defense Contractors "commit[ted] culpable conduct by continuing to sell Israel weapons with [that] knowledge." Id. That threshold determination regarding Israel's conduct, however, cannot be made consistent with the principles set forth in the political question and act of state doctrines.

## II.     THE POLITICAL QUESTION DOCTRINE PRECLUDES AN EVALUATION OF ISRAEL'S CONDUCT

Plaintiffs agree that the existence of one or more of the factors laid out in Baker v. Carr, 369 U.S. 186, 217 (1962), is indicative that the Court is being called upon to adjudicate a nonjusticiable political question. Opposition, at 9. Plaintiffs ineffectively attempt to sidestep this doctrine in several ways.

### A.     Plaintiffs' Action Challenges the Foreign Policy of the United States Through An Attack on Approved Military Transfers to Israel

Plaintiffs first attempt to escape the political question doctrine by suggesting that it applies only to Executive Branch decisions "to prosecute armed hostilities." Id. That suggestion is unfounded in logic and in the case law. See, e.g., Kucinich v. Bush, 236 F. Supp.2d 1, 15-16 (D.D.C. 2002) ("The Constitution . . . clearly relegates authority over foreign affairs to the

5

Executive and Legislative Branches, with no role for the Judicial Branch to second-guess or reconsider foreign policy decisions.").[3] The constitutional authority to conduct foreign policy is not stripped from the political branches merely because it is accomplished through diplomacy rather than armed conflict. Indeed, to wave the olive branch, rattle the saber, or "let slip the dogs of war" in the conduct of foreign policy are each decisions committed to the political branches. See, e.g., Motion to Dismiss, at 21-24.

Second, Plaintiffs attempt to minimize the effect of their concession by arguing that "the questions concerning the Arms Manufacturers have little to do with foreign policy, per se." Opposition, at 13. To the contrary, it has everything to do with the foreign policy concerns of the United States.

Approval of transfers, precise configuration of weaponry and avionics are vested with U.S. government. Plaintiffs do not dispute – indeed, they do not even address – the detailed process by which the U.S. government reviews, analyzes, and approves requests for military support by foreign allies. See Motion to Dismiss, at 10-17. The Defense Contractors will not repeat this description here, and Plaintiffs' do not contest that the Defense Contractors complied with, as they describe it, "the labyrinth of arms procurement regulations." Opposition, at 3. What the Plaintiffs fail to acknowledge, however, is that at the center of that labyrinth is the core

---

[3] The Court in Kucinich held that judicial review of a decision by the Executive Branch to withdraw from a treaty with Russia would implicate several of the Baker v. Carr factors: an unusual need for unquestioning adherence to a political decision already made, the potential for embarrassment from multifarious pronouncements by various departments on one question, and a failure to accord respect due to the coordinate branches of government. Id. at 16-17. The Court noted: "Foreign governments must be able to rely on the pronouncements of the United States regarding its treaties." Id. at 16. This statement has equal relevance here, when the political branches of the United States have made the foreign policy determination to support Israel politically, financially, and militarily.

principle of foreign military transfers – review and approval by the political branches of government and a prerequisite finding that the transfers "will strengthen the security of the United States and promote world peace."  22 U.S.C. sec. 2753(a)(1) (2000).

Plaintiffs are attempting through this suit to extract money damages[4] from the Defense Contractors for providing military equipment to Israel, even though such transactions were sanctioned by the political branches and formed an integral part of U.S. relations with Israel and Middle East policy.  See, e.g., Dickson v. Ford, 521 F.2d 234 (5th Cir. 1975).

Plaintiffs are guilty of speaking out of both sides of their mouths.  On the one hand, they claim that "the complaint does not seek judicial review of the President's authority to wage war or conduct foreign policy."  Plaintiff's Opposition, at 12.  At the same time, however, they seek monetary damages against the Defense Contractors because they manufactured military equipment that was provided to Israel, either by the Defense Contractors or by the federal government.  In essence, they seek to penalize the Defense Contractors and hold them liable for providing military equipment to Israel, even though such action took place with the express approval and explicit authorization of the U.S. government and a determination that such action was in furtherance of U.S. foreign policy goals.

In this larger sense, Plaintiffs attempt through this proceeding against the Defense Contractors to attain indirectly what they concede they cannot attain directly – judicial review of the federal government's decision to support Israel.  Damage awards and court proceedings can be just as effective at changing conduct as statutory prohibitions.  Faced with the possibility of litigation or adverse jury awards in the future, the Defense Contractors (and others like them)

7

may be understandably reluctant to provide military equipment to U.S. allies (or, indeed, to the U.S. military itself, at least not without guarantees that the U.S. will not re-sell or otherwise provide the equipment to foreign allies, as it may have done with some of the equipment at issue here).  Cf. Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988) ("The imposition of liability on Government contractors [for what ultimately is a government decision] will directly affect the terms of Government contracts:  either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.  Either way, the interests of the United States will be directly affected.")  Similarly, an indirect attack upon the Defense Contractors who provide the military equipment used by the United States to support Israel may achieve the same result that would be prohibited by the political question doctrine.

      The contrary cases upon which the Plaintiffs rely on this point are easily distinguishable.  For example, Plaintiffs cite to Kadic v. Karadzic, 70 F.3d 232 (2nd Cir. 1995).  Kadic was an action brought against the leader of insurgent Bosnian-Serb forces under the Alien Tort Claims Act and Torture Victims Protection Act to recover for alleged torture, genocide, and other violations of international law.  The court declined to dismiss the case on political question grounds, even though the case touched upon questions of foreign policy.  Importantly, the court noted that the federal government had disclaimed any desire that the court should abstain from hearing the case based upon the political question doctrine.  Id. at 250.  Here, the federal government is a defendant and has explicitly asserted the political question doctrine.  See Federal Defendants' Memorandum in Support of Motion to Dismiss, at 33-41.

---

*(Footnote cont'd from previous page.)*

[4] Plaintiffs' Complaint even seeks injunctive relief against providing future support to Israel.  Complaint, ¶¶ 558-62.

8

Ramirez de Arellano v. Weinberger, 745 F.2d 1500 (D.C. Cir. 1984), vacated and remanded on other grounds, 471 U.S. 1113 (1985), is also instructive.  Declining to apply the political question doctrine in a case brought against the United States to recover for the loss of property in connection with a foreign military training base, the D.C. Circuit noted that the plaintiffs did "not challenge United States relations with any foreign country.  The case does not raise the specter of judicial control and management of United States foreign policy." Id. at 1513.  Further, the D.C. Circuit distinguished and cited with approval the result in Dickson, in which the Fifth Circuit upheld the dismissal of a challenge to military and economic assistance to Israel.  As the D.C. Circuit noted: "If adjudicated, those broadside attacks on fundamental foreign policy decisions [such as in Dickson] might have resulted in conflicting pronouncements from the Judiciary and the political branches over the basic tenets of United States relations with foreign states."  745 F.2d at 1514.  That is exactly the danger in this case.

### B. The Court Lacks Judicially Manageable Standards By Which to Evaluate Israel's Conduct

The instant case also runs afoul of the Baker v. Carr standard because no judicially manageable standards exist by which the Court could adjudicate the dispute.  Baker, 369 U.S. at 217.  As set forth in the Defense Contractors' Motion, the Court has no standards for evaluating, for example, the merits of the United States' alliance with Israel; the appropriateness of the provision of military equipment to Israel; and the necessity for the deployment and use of the equipment during a time of terrorism and civil unrest.  See Motion, at 20-21.

Plaintiffs dismiss these issues, arguing instead that the judiciary is well-suited to resolve this dispute because Israel has violated "well established" norms of international law that prohibit such things as torture, cruel and inhuman treatment, summary execution, arbitrary detention, and collective punishment.  Opposition, at 16-17.  As described by Plaintiffs, these

9

norms are so well-established that "Israel's acts are never acceptable for legitimate internal security or self-defense or any other purpose." Opposition, at 8. As a result, the questions faced by the Court are "very straightforward and manageable." Id. at 2.

Even presuming for purposes of this motion that this list of "international norms" is valid and correct, and that the violation thereof gives rise to a cause of action, there still is an absence of judicially manageable standards against which to measure Israel's use of the military equipment provided by the Defense Contractors. The only international "norm" that Israel is alleged to have violated that in any way is connected with the equipment provided by the Defense Contractors is the prohibition against collective punishment, i.e., that Israeli military forces used the equipment to "punish" collectively in retaliation for armed uprisings.

The prohibition against collective punishment does not, however, provide the Court with a judicially manageable standard against which to evaluate alleged violations. There is no way for the Court to determine what conduct rises to the level of collective punishment, even using the construction of the norm set forth by Plaintiffs in their opposition. The Fourth Geneva Convention, cited by Plaintiffs, prohibits destruction of property belonging to private persons, "except where such destruction is rendered absolutely necessary by military operations." Opposition, at 18. Plaintiffs also rely on Article 51 of Protocol I to the Geneva Convention, which prohibits attacks "which are not directed at a specific military objective." Id.

Thus, in order for the Court to determine whether the alleged destruction of property by the Israeli military using equipment manufactured by the Defense Contractors was collective punishment, and consequently a violation of international law, the Court will have to examine whether the military operation was "necessary" and directed at a "legitimate" military objective,

10

including self-defense.  This "standard" is no standard at all, and would thrust the Court squarely into realms outside judicial expertise.

Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992), a case cited by Plaintiffs in support of their view that such standards exist by which to evaluate the conduct of Israel, see Opposition, at 15, is easily distinguishable and actually supports the Defense Contractors' argument.  The case related to alleged tortious conduct by Nicaraguan "contras" and their U.S.-based supporters during the Nicaraguan civil war.  The Eleventh Circuit permitted the case to go forward, but only against several individual defendants based in the United States who allegedly plotted and ordered the torture and murder of a particular individual.  To that extent, "the complaint challenge[d] neither the legitimacy of the United States foreign policy toward the contras, nor [did] it require the court to pronounce who was right and who was wrong in the Nicaraguan civil war."  Id. at 337.

The Eleventh Circuit upheld the dismissal of the other, broader allegations of the complaint, relating to whether the contras generally committed acts of terror and torture in violation of international law.  The resolution of these allegations would have required the court:

> to discern between military, quasi-military, industrial, economic and other strategic targets, and rule upon the legitimacy of targeting such sites as hydroelectric plants on Nicaraguan soil in the course of a civil war.  We would be called upon to inquire into whether, and under what circumstances, defendants were justified in targeting such sites, with knowledge that civilians or paramilitary or military personnel would be present at these sites.  Indeed, we would be called upon to discern between military or paramilitary personnel guarding a strategic dam and engineers building or maintaining such a site during time of war.

Id. at 335.  The Eleventh Circuit held that such issues were non-justiciable under the political question doctrine.  The same absence of judicially manageable standards with respect to armed conflict warrants dismissal in the instant case.

11

### C. Adjudication of the Issues in this Case Could Result in "Multifarious Pronouncements" on Issues of Foreign Policy and Would Express a Lack of Respect Due to the Political Branches

As set forth in the Motion to Dismiss, the political question doctrine applies to those matters in which there exists the potential for embarrassment from multifarious pronouncements by different branches of government on one question, or if a court's involvement would express a lack of respect due to a coordinate branch of government, or when there exists an unusual need for unquestioning adherence to a political decision already made. Motion to Dismiss, at 25.

Plaintiffs argue that these elements from Baker are too expansive, and that "the Executive Branch cannot hide behind its fear of embarrassment" to prevent Plaintiffs' claims from being heard. Opposition, at 26. Plaintiffs fail to comprehend, however, that it is not for the benefit of the Executive Branch that this doctrine exists, but for the benefit of all branches of the government, as well as the nation itself. In the arena of foreign relations, there is a "necessity for the nation to speak with a single voice," DKT Memorial Fund Ltd. v. AID, 887 F.2d 275, 291 (D.C. Cir. 1989), and that single voice rests not with the judiciary, but with the political branches of government. See Kucinich, 236 F. Supp.2d at 16-17.

Both the President and Congress have made clear the United States' support for Israel, its central role in U.S. foreign policy in the Middle East, and the United States' commitment to Israel's fight against terrorism. Motion to Dismiss, at 7-8. In today's political climate, a challenge to that support could prove devastating to U.S. foreign policy, and the Court should refrain from entertaining that challenge.

### III. THE ACT OF STATE DOCTRINE PRECLUDES AN EVALUATION OF ISRAEL'S CONDUCT

"The act of state doctrine prevents judicial relief for certain claims that would require the court to pass on the validity of acts of a foreign state." Ramirez, 745 F.2d at 1533. "Separation

12

of powers concerns are the underpinnings of the act of state doctrine; the defense bars adjudication when it appears that relief would interfere with delicate foreign relations conducted by the political branches." Id. at 1434 (citation omitted).  The doctrine also preserves international comity.  In short, the act of state doctrine requires that courts deem valid the acts of a foreign sovereign within its jurisdiction.  See W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 493 U.S. 400 (1990).

Here, Plaintiffs challenge the Defense Contractors' "temerity" to raise the act of state doctrine when the Federal Defendants have not.  Opposition, at 29.  What the Plaintiffs fail to realize is that the application of the doctrine does not hinge upon the conduct of the Federal Defendants, but upon the conduct of Israel.[5]  As discussed above in section I, Plaintiffs' action against the Defense Contractors necessarily requires the Court to examine the conduct of Israel.  Under the act of state doctrine, that conduct should be deemed valid and, necessarily, the Plaintiffs' action against the Defense Contractors must fail.

The act of state doctrine can apply in cases brought under the ATCA.  See, e.g., Kadic, 70 F.3d at 250 (noting that "The act of state doctrine, under which courts generally refrain from judging the acts of a foreign state within its territory, . . . might be implicated in some cases arising under section 1350").  The focus must be on whether the case can be resolved without having to adjudicate the foreign country's sovereign acts.  See Ramirez, 745 F.2d at 1542 (declining to apply act of state doctrine because "the plaintiff has not attacked the legality of the

---

[5] Counsel for Israel and the Israeli government defendants recently entered an appearance in this case and have announced their intention to move to dismiss the action on or before May 29, 2003, for improper service and other unspecified grounds.

13

Honduran government's activities before *this* court. . . . The entire suit could conceivably be resolved with no reference to Honduran government involvement.").

Plaintiffs argue, however, that the doctrine does not apply when "the political branches have specified the controlling legal principles in a treaty with the foreign sovereign or when there are generally accepted tenets of international law concerning the foreign act," Opposition, at 28, and pointing to the "clear violations of international law alleged by Plaintiffs." Opposition, at 29. No such treaty exists in this case, and as explained above, those alleged violations of international law are by no means clear, notwithstanding Plaintiff's assertions. Consequently, the act of state doctrine is in full force, and the case should be dismissed on that ground as well.[6]

---

[6] Plaintiffs have suggested that the act of state doctrine is inapplicable because the alleged violations of human rights can never be the "public acts" of a state. Opposition, at 29. This argument proves too much and is circular in its reasoning. If the alleged violations of human rights are, in fact, <u>not</u> the public acts of Israel, then Israel cannot be found to have violated international norms of conduct, which the Plaintiffs admit is a prerequisite to any potential liability of the Defense Contractors. Opposition, at 7.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice as to the Defense Contractors.

                                                     Respectfully submitted,
                                                     MCKENNA LONG & ALDRIDGE LLP

                                                     By:

                                                         Raymond B. Biagini (D.C. Bar #320838)
                                                         Kurt J. Hamrock (D.C. Bar #442619)

                                                         1900 K Street, N.W.
                                                         Washington, D.C. 20006
                                                         (202) 496-7500

                                                         Attorneys for Defendants
                                                         The Boeing Company
                                                         McDonnell Douglas Helicopter Corporation
                                                         Textron Inc.
                                                         Bell Helicopter Textron Inc.
                                                         Colt's Manufacturing Company, Inc.
                                                         Glen E. Hess
                                                         John R. Murphy
                                                         Lewis B. Campbell
                                                         Phillip Condit
                                                         William M. Keys

Dated:  March 14, 2003