## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, <u>et al.</u>,   ) | |
| ) | |
| Plaintiffs,   ) | |
| )   No. 1:02 CV 01431 (JDB) | |
| v.   ) | |
| ) | |
| STATE OF ISRAEL, <u>et al.</u>,   ) | |
| ) | |
| Defendants.   ) | |
| ) | |

## FEDERAL DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS OFFICIAL CAPACITY CLAIMS

### PRELIMINARY STATEMENT

In an opposition virtually devoid of legal analysis, Plaintiffs have utterly failed to rebut any of the arguments set forth by the Federal Defendants in support of their motion to dismiss. Indeed, Plaintiffs concede that "there are any number of reasons that are perhaps available for the Court to dismiss many of the claims asserted against the Federal Defendants." Plaintiffs' Memorandum of Points and Authorities in Opposition to Federal Defendants' Motion to Dismiss Official Capacity Claims ("Pl. Opp.") at 1-2. Rather than addressing the legal merits of the Federal Defendants' arguments – which are fatal to Plaintiffs' claims – the Plaintiffs instead persist in characterizing core Article III requirements such as standing as "prudential reasons" barring review, <u>id.</u> at 1, set forth sweeping allegations regarding the treatment of "Palestinians" generally without regard to the specific Plaintiffs whose claims are at issue here, and argue that their claims should be heard because Plaintiffs have "a hope" that United States policy toward Israel will ultimately change. <u>Id.</u> at 3. Plaintiffs' Opposition thus confirms that which was evident on the face of their Complaint – this is a political case seeking to make a political point

that has no place in this Court.  <u>See, e.g.</u>, <u>id.</u> at 3 (change in U.S. foreign policy "must come from

the political branches").  For all of the reasons set forth in the Memorandum of Points and

Authorities in Support of Federal Defendants' Motion to Dismiss Official Capacity Claims

("Federal Defendants' Memorandum" or "Fed. Def. Mem."), and for the reasons set forth below,

the claims against the Federal Defendants in their official capacity should be dismissed.

## <u>ARGUMENT</u>

**I.      Plaintiffs' RICO and Common Law Tort Claims Against the Federal Defendants in
         Their Official Capacity Must Be Dismissed.**

Plaintiffs concede that any RICO and common law tort claims "must be asserted against

George W. Bush and Colin Powell in their individual capacities."  Pl. Opp. at 11 n.6.  <u>See also</u>

Fed. Def. Mem. at 13-15.  Accordingly, those claims, to the extent that they are asserted against

the President and Secretary of State in their official capacities, must be dismissed.[1]

**II.     Plaintiffs Fail to State a Claim for Injunctive Relief.**

As set forth in the Federal Defendants' Memorandum, Plaintiffs fail to state a claim for

the injunctive relief they seek because neither the Arms Export Control Act ("AECA") nor the

Foreign Assistance Act of 1961 ("FAA") provides a private cause of action to enforce its terms.

<u>See</u> Fed. Def. Mem. at 15-18.  Rather than addressing the legal test adopted by the Supreme

---

[1] The Federal Defendants note that the Complaint in this action – which expressly asserts claims against the Federal Defendants in both their official and individual capacities – was filed on July 18, 2002, and to the best of the undersigned's knowledge no effort has yet been made to serve Messrs. Bush or Powell individually.  <u>See</u> Fed. R. Civ. P. 4(m) (requiring service of summons and complaint to be made "within 120 days after the filing of the complaint").  The undersigned is not authorized to, and does not, represent George W. Bush and Colin Powell in their individual capacities, and this brief takes no position with respect to Plaintiffs' request to "clarify" the nature of the claims "in the Complaint and to serve Mr. Bush and Mr. Powell, individually."  Pl. Opp. at 11 n.6.

Court for assessing whether a statute provides for a private right of action, see id. at 15-16 (citing Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) and Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979)), or attempting to distinguish the express holding of the one court to address the issue, see Fed. Def. Mem. at 17 (citing Clark v. United States, 609 F. Supp. 1249, 1251 (D. Md. 1985) (FAA "does not create standing for any taxpayer *or any private party* to sue for its enforcement")), Plaintiffs rely solely on *dictum* from a district court opinion issued over twenty years ago. See Pl. Opp. at 19-20 (relying on Crockett v. Reagan, 558 F. Supp. 893 (D.D.C. 1982), aff'd, 720 F.2d 1355 (D.C. Cir. 1983)). Crockett involved a challenge by 29 Members of Congress, *inter alia*, to the continued provision of military aid to El Salvador. Plaintiffs argued that such aid violated the FAA's prohibition on the provision of aid to a country the government of which engages in a consistent pattern of gross violations of internationally recognized human rights. Crockett, 558 F. Supp. at 902. In dismissing the Representatives' FAA-based claim, the court expressly noted that because it was dismissing on other grounds, it was "not reach[ing] the other issues" urged by the defendants in that case, including the argument that the FAA does not provide for a private right of action. Id. The *dicta* relied upon by Plaintiffs – suggesting that a court might someday disagree with the President's assessment of the human rights situation in a foreign country – simply cannot overcome the conclusion that neither the FAA nor the AECA provide for a private cause of action, as the court in Clark expressly held. Fed. Def. Mem. at 15-18.

Moreover, Plaintiffs fail to address, and thus concede, the Federal Defendants' contention that the APA also does not provide for a private cause of action in this case. See Fed. Def. Mem. at 18-24. Plaintiffs' claim must therefore be dismissed.

**III.    Plaintiffs Lack Standing to Assert Their Claim for Injunctive Relief.**

Plaintiffs also lack standing to assert their claim for injunctive relief against the Federal Defendants because they cannot meet any of the three prongs of the Constitutionally-based standing test.  See Fed. Def. Mem. at 25-33.  First, Plaintiffs cannot demonstrate an injury-in-fact sufficient to establish standing for the injunctive relief they seek.  Id. at 26-27.  With respect to injury-in-fact, Plaintiffs make two assertions.  As an initial matter, they appear to argue that simply because they have pled that they will be subject to future harm, this contention must be accepted as true.  Pl. Opp. at 11.  But Plaintiffs have failed to plead any *facts* that, if proven, would establish future harm.  Simply asserting a conclusion, without supporting factual allegations, is insufficient to overcome a motion to dismiss.  "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by *facts* set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (emphasis added); see also Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).

Plaintiffs also argue, with respect to injury-in-fact, that news reports of continued strife in Israel, the West Bank and the Gaza Strip demonstrate the "near certainty" of future harm to Plaintiffs.  Pl. Opp. at 12-13.  Whatever minimal value such reports might have if all "Palestinians" were Plaintiffs in this action or if the news reports related to injuries to the Plaintiffs in this case, the reports have no value in light of the fact that they do not in any way relate to any of the Plaintiffs in this case.  While Plaintiffs apparently seek to use this lawsuit as a vehicle by which to make a political statement regarding the ongoing violence in the Middle East, they do not represent all "Palestinians" before this Court.  Because Plaintiffs have failed to

allege any facts demonstrating that *they* are in danger of suffering future harm – let alone that such future harm is "certainly impending" – they have failed to meet the injury-in-fact requirement of standing.

Second, Plaintiffs also fail to meet the causation prong of the standing requirements.  <u>See</u> Fed. Def. Mem. at 27-30.  As set forth in the Federal Defendants' Memorandum, "there is simply no causal link between the reports about which Plaintiffs complain and the injuries they claim to have suffered."  <u>Id.</u> at 28.  First, the issuance of an AECA report or the inclusion of some particular information in an FAA human rights report does not mandate the cessation of military aid.  <u>Id.</u> at 28.  Second, even the cessation of military aid would not have prevented Plaintiffs' alleged injuries (nor would it prevent their speculative alleged future injuries).  <u>Id.</u> at 29.  Plaintiffs do not dispute either of these propositions, and fail to address the cases cited by the Federal Defendants in this regard.  <u>See</u> Fed. Def. Mem. at 28-30.

Instead, Plaintiffs argue that the alleged failure to comply with the AECA and FAA must simply "be pled to be a substantial cause" of Plaintiffs' injuries.  Pl. Opp. at 15.[2]  Setting aside Plaintiffs' lack of support for, or explanation of, this proposed standard, they have simply failed to allege facts demonstrating that the absence of an AECA report or some specific information in the FAA human rights report has been (or will be) a "substantial cause" of their injuries.  Indeed,

---

[2] Plaintiffs' citation to <u>Center for Auto. Safety v. Dole</u>, 828 F.2d 799 (D.C. Cir. 1987), for this proposition is puzzling.  <u>See</u> Pl. Opp. at 15.  <u>Center for Auto. Safety</u> expressly does not address standing. 828 F.2d at 800 n.1 (noting that "government does not contest [standing] determination on appeal").  Moreover, the cited panel opinion in <u>Center for Auto. Safety</u> was vacated upon rehearing, and the district court's decision dismissing the complaint was affirmed. <u>See</u> 846 F.2d 1532 (D.C. Cir. 1988).  Nor does <u>Allen v. Wright</u>, 468 U.S. 737 (1984) (cited at Pl. Opp. at 15) support Plaintiffs' view of the law.  <u>Allen</u> does not use the "substantial cause" standard suggested by Plaintiffs, and in any event held that the plaintiffs there lacked standing.

Plaintiffs do not even attempt to argue that the absence of these reports has caused or will cause *their* injuries.  While they do argue that "[a]ny suggestion . . . that Israel may be misusing [American] weapons would have an enormous effect in Israel," Pl. Opp. at 16, they fail to describe the nature of that alleged effect or how it might relate to the Plaintiffs, or to allege any facts supporting this broadly-worded and general conclusion.  To the contrary, even Plaintiffs' own recitation of the historical invocation of the AECA's notice provision, see id. at 17-18, suggests that the relief Plaintiffs seek here has, historically, only contributed to the temporary suspension of the delivery of a handful of aircraft to Israel.  Plaintiffs have thus utterly failed to establish any causal link between the issuance of the reports they seek and the harms about which they complain.

Third, and for similar reasons, Plaintiffs also fail to meet the redressability prong of the standing test.  See Fed. Def. Mem. at 30-33.  As with the rest of the Federal Defendants' arguments, Plaintiffs simply ignore the cases cited by the Federal Defendants and the applicable law in addressing this issue, asserting simply that although this Court lacks the power to directly affect Israeli conduct, it can "start in motion the statutory apparatus to effect [sic]" that conduct.  See Pl. Opp. at 18-19.  Plaintiffs, of course, provide no support for this conclusion.  As just discussed, the "[h]istory" to which they refer, Pl. Opp. at 18, demonstrates solely that the "statutory apparatus" they seek to invoke, id. at 19, has at most contributed to the delayed delivery of certain weapons to Israel.  It has not stopped all American aid to Israel, has not directly affected Israeli conduct generally, and certainly Plaintiffs have not alleged facts that demonstrate that it is likely to affect Israeli conduct vis a' vis the Plaintiffs here.  Because it would be "pure speculation" to presume that the requested relief would alleviate Plaintiffs'

alleged harms, see Fed. Def. Mem. at 33 (quoting Freedom Republicans, Inc. v. Federal Election Comm'n, 13 F.3d 412, 419 (D.C. Cir. 1994)), Plaintiffs lack standing.

## IV.   Plaintiffs' Claim Raises Non-Justiciable Political Questions.

Failing to cite a single case,[3] Plaintiffs argue that their injunctive claim for relief against the Federal Defendants does not raise a political question because "the actions alleged to have been committed against the Plaintiffs by official Israeli policy simply cannot be characterized as 'in furtherance of Israel's internal security or self defense.'"  Pl. Opp. at 8-9.  Plaintiffs' argument, however, completely disregards the substantial body of case law holding that claims that require an assessment of the United States' foreign policy are non-justiciable political questions.  See Fed. Def. Mem. at 33-41.  Indeed, Plaintiffs simply ignore both Dickson v. Ford, 521 F.2d 234 (5th Cir. 1975), and Mahorner v. Bush, 224 F. Supp. 48 (D.D.C. 2002), aff'd, 2003 WL 349713 (D.C. Cir. 2003), each of which held that challenges to the continued provision of aid to Israel raise non-justiciable political questions.  See Fed. Def. Mem. at 34-35, 37.  Rather than confronting this inconvenient precedent and attempting to explain why they contend it is wrong, Plaintiffs instead jump to the merits of their claim, arguing that because, in their view, "the acts alleged are never allowed under universal norms or international law," the "nuanced value judgments supposedly required of the President are inapplicable here" and the claim cannot be deemed to raise political questions.  Pl. Opp. at 9.

Plaintiffs' argument fails not only as a result of Plaintiffs' failure to address the relevant case law, but also because it conflates the merits of Plaintiffs' claim with the justiciability

---

[3] Plaintiffs do cite a handful of cases in their Memorandum of Points and Authorities in Opposition to the Arms Defendants' Motion to Dismiss ("Pl. Contractor Opp.").

determination.  According to Plaintiffs' logic, their claim does not raise a political question because the Israelis' alleged conduct can never be considered to be legitimate self-defense. Plaintiffs' argument, however, seeks to avoid the political questions raised by their claim by answering those very questions in Plaintiffs' favor.  It is the very determination as to whether Israel's actions might constitute a violation of a bilateral agreement entered into pursuant to the AECA that is one of the political questions raised by Plaintiffs' claim.  To argue that such a question does not require political, value-laden judgments because the answer is obvious, is simply to assume away the issue.  The political nature of Plaintiffs' claim does not turn on how "right" Plaintiffs believe they are; it is the nature of the determination that is called for (as well as its implications for United States foreign policy) that renders Plaintiffs' claim non-justiciable, and the justiciability determination does not change simply because Plaintiffs believe their claims are clearly meritorious.[4]  Indeed, the fact that the President has not determined Israel to be in violation of a bilateral agreement entered into pursuant to the AECA, and the continued Congressional support for Israel throughout the current conflict, see Fed. Def. Mem. at 24 n.20; Defense Contractors' Motion to Dismiss Pursuant to Rule 12(b)(1) and Memorandum in Support Thereof ("Defense Contractors' Motion") at 8-9, demonstrate that Plaintiffs' view of the situation differs significantly from the views of those elected by the American people to make foreign policy determinations.  Because the nature of Plaintiffs' claim calls for a political, rather than a

---

[4] Plaintiffs' argument recognizes that in cases where the alleged violation is less clear than it is alleged to be here, the political question doctrine would apply, as even Plaintiffs concede that such cases would require "nuanced value judgments" and a "balancing of interests."  Pl. Opp. at 9.

judicial, determination, it is not justiciable.[5]

Plaintiffs' treatment of the political question doctrine in their opposition to the Defense Contractors' Motion fares no better.  For example, Plaintiffs cite Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1511 (D.C. Cir. 1984) (en banc), vacated and remanded sub nom. Weinberger v. Ramirez de Arellano, 471 U.S. 1113 (1985), for the proposition that the political question doctrine only applies to "sweeping challenges" to foreign policy determinations.  Pl. Contractor Opp. at 11-13 (repeatedly citing Ramirez).  Ramirez – which held that a claim that the United States military had taken over plaintiffs' property in Honduras was justiciable – was subsequently vacated, and is thus of no precedential weight.  More importantly, the Ramirez court expressly distinguished Dickson, which, like the case at bar, challenged the provision of military aid to Israel.  Ramirez, 745 F.2d at 1513 (noting that "plaintiffs do not . . . challenge United States relations with any foreign country" and distinguishing Dickson).  If anything, therefore, Ramirez further supports the Federal Defendants' contention that Plaintiffs' claim – which does "challenge United States relations with [a] foreign country" – is nonjusticiable.  Nor does Plaintiffs' litany of alleged violations of international law by Israel, Pl. Contractor Opp. at 18-25, in any way address the question of whether Plaintiffs' claim is a nonjusticiable political question.  For the reasons set forth above, and in the Federal Defendants' Memorandum, Plaintiffs' claim raises nonjusticiable political questions and should be dismissed.

---

[5] Plaintiffs' reliance on the United States' Memorandum filed in Filartiga v. Pena-Irala, see Pl. Opp. at 6-7 & nn. 2-4, is misplaced.  The Memorandum nowhere addresses the political question doctrine, but merely states that, under the facts of that case, torture of a foreign citizen by an official of the same foreign country is a violation of the law of nations under 28 U.S.C. § 1350.  The Filartiga Memorandum has no bearing on the claim against the Federal Defendants.

**V.      This Court Lacks the Power to Enjoin the President of the United States.**

Plaintiffs, apparently recognizing the futility of their injunctive claim, have failed to address the Federal Defendants' argument that this Court lacks the power to issue an injunction against the President.  See Fed. Def. Mem. at 41-43.  Plaintiffs' injunctive claim against the President must therefore be dismissed for this independent reason as well.

In a belated effort to save their claim, Plaintiffs now suggest that the Court convert their claim for an injunction into one for declaratory judgment (a remedy not sought in Plaintiffs' 140-page Complaint).  Pl. Opp. at 21-22.  While declaratory relief might be available *if* Plaintiffs' claims were otherwise cognizable, justiciable, and properly before the Court, for all of the reasons set forth above they are not.  Accordingly, they must be dismissed.

## CONCLUSION

Plaintiffs' lawsuit is clearly motivated by political, rather than legal considerations.  Because this Court is not an appropriate forum for such claims, and for the reasons discussed above and in the Federal Defendants' Memorandum, Plaintiffs' claims against the Federal Defendants in their official capacities must be dismissed.

Dated:  March 28, 2003.          Respectfully submitted,

                                 ROBERT D. McCALLUM, JR.
                                 Assistant Attorney General

                                 ROSCOE C. HOWARD, JR.
                                 United States Attorney

VINCENT M. GARVEY
Deputy Branch Director


_____
ORI LEV, DC # 452565
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Mail:          P.O. Box 883, Washington, DC  20044
Delivery:      20 Massachusetts Ave., NW, Rm 7330
               Washington, DC 20001
Tel: (202) 514-2395
Fax: (202) 616-8202

Attorneys for Defendants
George W. Bush and Colin Powell
in their official capacities

11