UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JOHN DOE I, et al.,

                    Plaintiffs.                           1:02CV01431 - JDB

       v.

STATE OF ISRAEL, et al.,

                    Defendants.

_____

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF DEFENDANTS CONGREGATION RINAT YISRAEL, RABBI YOSEF ADLER AND ARNON HILLER TO DISMISS THE CLAIMS ASSERTED AGAINST THEM

David O. Bickart (355313)
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W, Suite 1100
Washington, DC  20005-2327
(202) 682-3500

Aaron Stiefel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000
Attorneys for Defendants
Congregation Renat Yurael,
Rabbi Yosef Adler and Arnon Hiller

Doc#~4191846.WPD

Defendants Congregation Rinat Yisrael ("Rinat"), Rabbi Yosef Adler and Arnon Hiller (collectively, the "Rinat Defendants") submit this memorandum of law in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6), to dismiss plaintiffs' Complaint as against them.

## PRELIMINARY STATEMENT

Plaintiffs' answering papers are triply flawed.

First, plaintiffs rely on blatant mischaracterizations of existing law and on pleas that the Court make new law so as to preserve plaintiff John Doe II's claims.  In response to the Rinat Defendants' showing that the Complaint does not properly allege essential elements of John Doe II's RICO claim under 18 U.S.C. §§ 1962(b), (c) and (d) -- such as an "enterprise," "conduct" of an "enterprise," a "pattern of racketeering activity," and an "interest" in an "enterprise" -- plaintiffs blithely ignore the ample case law underlying the Rinat Defendants' interpretation of those statutory terms.  Instead, plaintiffs rely on their own broader reading of the RICO statute without a shred of case law support.  In addition, plaintiffs ask the Court to create new law regarding both the extraterritorial application of the RICO Act and personal jurisdiction based only on an Internet Website.

Second, plaintiffs all but disregard the sparse allegations of their Complaint.   The Complaint asserts only that the Rinat Defendants "knowingly provided funds specifically earmarked for materials" that the defendant Halamish settlement is using "to illegally terrorize the neighboring property owners and confiscate their land."  (Complaint ¶ 74).  However, in opposing the Rinat Defendants' motion, plaintiffs transform that conclusory, bare-bones allegation into a claim that the Rinat Defendants "filled . . . orders for paramilitary equipment by

soliciting others through its interactive Internet site; all with the knowledge that the Halamish

Settlement violates international law and its existence is maintained by threats and coercion of

the civilian Palestinian population, including John Doe II."  (Pl. Br. 14).[1]  Plaintiffs also now

attribute to the Rinat Defendants -- again with no support in the Complaint -- "leadership roles in

fund-raising here in the United States," "[the] specific solicitation of funds for items that would

be used to perpetuate human rights abuses," "consent to . . . paramilitary activity," and "regular

and continuous donations of thousands of dollars."  (Pl. Br. 6, 17).  Plainly, the Rinat

Defendants' motion must be decided based on the allegations of the Complaint, as filed, not

based on unfounded assertions that plaintiffs did not and could not in good faith include in the

Complaint.

        <u>Third</u>, plaintiffs attempt to cast John Doe II's allegations against the Rinat

Defendants, sounding in tort -- that unidentified settlers "traumatized" plaintiff John Doe II by

threatening him, shooting at his house and damaging his land -- as an opportunity for this Court

to adjudicate the legality of West Bank settlements such as Halamish.  In doing so, plaintiffs run

afoul of the political question doctrine.  Plaintiffs would have this Court usurp the role of the

Executive Branch and dictate foreign policy to the President of the United States.  For this reason

too, John Doe II's claims against the Rinat Defendants should be dismissed.

        Plaintiffs' answering papers do nothing to counter the Rinat Defendants' showing

in their opening brief that the bottom line in this case is as follows:

        •       John Doe II claims to have been harmed outside of the United States by

---

[1]      Reference is to plaintiffs' Memorandum of Points and Authorities in Opposition to
        Motion of Defendants Cong. Rinat Yisrael, Rabbi Yosef Adler and Arnon Hiller to
        Dismiss Claims.

conduct which occurred outside of the United States.  Consequently, the RICO Act does not apply here.

- Plaintiffs fail to plead essential elements of RICO claims:  the existence of an organized "enterprise"; that the Rinat Defendants had a proprietary "interest in or control of" such an "enterprise"; that the Rinat Defendants engaged in a "pattern of racketeering activity"; that the Rinat Defendants "conduct[ed] or participat[ed]" in "the conduct of [an] enterprise's affairs"; and an agreement on the part of the Rinat Defendants to engage in unlawful acts of racketeering activity.

- If John Doe II's RICO claim against the Rinat Defendants is dismissed, the Court lacks personal jurisdiction over the Rinat Defendants with respect to John Doe II's common law tort claims and the court should not exercise pendent jurisdiction over those claims.

- The Complaint fails to allege fundamental elements of the common law tort claims that are purportedly asserted against the Rinat Defendants.

Consequently, the Rinat Defendants' motion should be granted and the Complaint should be dismissed as against them.

## ARGUMENT

### POINT I

### THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER JOHN DOE II'S RICO ACT CLAIM AGAINST THE RINAT DEFENDANTS

Plaintiffs essentially concede that in order for plaintiff John Doe II to prevail on his RICO claim against the Rinat Defendants, this Court would have to make new law and "extend the extraterritorial reach of the civil RICO statute." (Pl. Br. 11). Plaintiffs acknowledge that "RICO cases have yet to fully embrace" the supposed need for a remedy in John Doe II's situation. (Pl. Br. 6).

Plaintiffs do not dispute the Rinat Defendants' showing that, in determining the extraterritorial reach of the RICO Act, courts have, to this point, been guided by cases concerning the extraterritorial application of the securities and antitrust laws and have employed two alternative tests: (1) a "conduct test," i.e., determining whether "conduct 'within the United States directly caused' the loss"; and (2) an "effects test," i.e., determining whether foreign conduct "has substantial effects" -- meaning not "remote" or "indirect" effects -- in the United States. See Giro v. Banco Espanol de Credito, S.A., 1999 U.S. Dist. LEXIS 9673, at *6-7 (S.D.N.Y. 1999), aff'd 208 F.3d 203 (2d Cir. 2000); see also North South Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1052 (2d Cir. 1996).[2] Although plaintiffs assert that "justification" for extraterritorial application of the RICO Act "can be found" here under either test (Pl. Br. 6-7), the allegations of the Complaint manifestly concern conduct and effects in the Middle East, not

---

[2]     We note that John Doe I  v. Unocal Corp., 2002 U.S. App. LEXIS 19263 (9th Cir. 2002), which we cited on this subject in the Rinat Defendants' opening brief, has been vacated pending *en banc* review.  2003 U.S. App. LEXIS 2716 (9th Cir. 2003).

in the United States.

The Complaint alleges that the Rinat Defendants participated in a vast conspiracy that included a host of Israeli government officials and entities as well as the other Settler Defendants.  The Rinat Defendants are said only to have "knowingly provided funds specifically earmarked for materials" -- such as bulletproof vests, armored jeeps and ambulances, floodlights, generators and security fence repairs -- "that are used by the [Halamish] [s]ettlement to illegally terrorize neighboring property owners and confiscate their land."  (See Complaint ¶¶ 74, 111). Hence, the Complaint suggests no more than that contributions to the Halamish settlement came from the United States.  The conduct complained of by John Doe II is otherwise alleged to have occurred in the Middle East.

Plaintiffs admit that under the "conduct" test, courts will have subject matter jurisdiction only where "the conduct in the United States directly caused the loss."  (Pl. Br. 6, citing Psimenos v. E.F. Hutton & Co., 722 F.2d 1041, 1046 (2d Cir. 1983); emphasis added). However, as described in the Complaint, plaintiff John Doe II was directly harmed by unidentified settlers who supposedly threatened him and took his land.  (Complaint ¶¶ 248-56). To the extent that the Complaint can be read to allege that the Rinat Defendants acted in the United States by funding the settlers overseas, the Rinat Defendants were, at most, an indirect cause of any harm to John Doe II.

Given that the Complaint is devoid of allegations of conduct in the United States, plaintiffs resort to unsupported assertions which they could not in good faith allege in the Complaint.  Plaintiffs now posit -- with no citation to their Complaint -- that "major aspects of the conspiracy occurred in the United States"; that the Rinat Defendants held "leadership roles in

fund-raising here in the United States"; that the Rinat Defendants engaged in the "specific solicitation of funds for items that would be used to perpetuate human rights abuses"; that the Rinat Defendants "consent[ed] to . . . paramilitary activity"; and that the Rinat Defendants "continue to provide material support for the illegal confiscation and occupation of John Doe II's land."  (Pl. Br. 6-7).  However, these unpleaded ruminations about conduct in the United States should not be considered in deciding the Rinat Defendants' motion.  See Henthorn v. Department of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994); In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 25072, at *24-25 (D.D.C. 2001).

Equally unfounded is plaintiffs' contention that the RICO statute should be afforded extraterritorial reach in this case because the Rinat Defendants' financial support of defendant Halamish satisfies the "effects" test.  Plaintiffs maintain that Israeli settlements have an effect on this country's "commerce" and "core political principles" in that "[i]llegal Israeli settlements such as Halamish drive the conflict in [the West Bank] and that conflict costs American taxpayers billions of dollars."  (Pl. Br. 8-9).  Clearly, though, the conduct allegedly financed by the Rinat Defendants had no direct effect in the United States.  John Doe II's claim that he was threatened by settlers who took his land is a quintessentially local issue regarding conflicting claims to the West Bank.  Any supposed link between what John Doe II characterizes as the "political and economic" costs of the Middle East conflict generally (Pl. Br. 9), on the one hand, and the Rinat Defendants' alleged support of Halamish, on the other hand, would be tenuous and, at best, indirect.

In any event, asking this Court to rule on the legality of Israel's West Bank settlements on the theory that Israel's settlement policy has a "political and economic" effect on

the United States would be barred by the political question doctrine.  As explained in the Rinat Defendants' opening brief (p. 4, n. 2), the resolution of certain questions touching foreign relations "frequently turns on standards that defy judicial application, or involve the exercise of a discretion demonstrably committed to the executive or legislative."  Baker v. Carr, 369 U.S. 186, 211 (1962).  Accord Japan Whaling Ass'n v. American Cetacean Society, 478 U.S. 221, 230 (1986) ("The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch").  (See also Mem. of Points and Authorities in Support of Federal Defendants' Motion to Dismiss at 33-41; Defense Contractors' Motion to Dismiss Pursuant to Rule 12(b)(1) and Memorandum in Support Thereof, at 18-26).

      Finally, there is no merit to plaintiffs' suggestion that in determining the extraterritorial reach of the civil RICO statute this Court should look not at the "conduct" and "effects" tests cited by other courts, but rather at 18 U.S.C. § 2333 which creates a cause of action for Americans harmed abroad by acts of what the statute defines as "international terrorism."  Congressional enactment of § 2333 to cover particular conduct "occur[ring] primarily outside the territorial jurisdiction of the United States," 18 U.S.C. § 2331(1)(C), certainly does not suggest that Congress intended that the RICO Act should be applied to reach additional extraterritorial conduct not covered by § 2333.

      Plaintiffs have not asserted a claim under 18 U.S.C. § 2333 and adding such a claim to the Complaint would be futile.  Accordingly, plaintiffs should not be granted leave to amend the Complaint to add a claim under § 2333.  See Parker v. Frank, 1992 U.S. Dist. LEXIS 5263, at *5 (D.D.C. 1992) ("plaintiff's request to amend his complaint shall be denied as futile").

For purposes of § 2333, the term "international terrorism" is defined to mean acts that "appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by assassination or kidnapping."  18. U.S.C. § 2331.  Here, the conduct complained of by John Doe II, a neighbor of the Halamish settlement, was supposedly directed at him specifically, so as to facilitate expansion of the Halamish settlement ("to illegally terrorize neighboring property owners and confiscate their land"; Complaint ¶ 74).  Clearly, there was no effort "to influence the policy of a government" or "affect the conduct of a government."  Nor is it alleged that the conduct that the settlers are said to have directed at John Doe II was aimed at intimidating or coercing the broader "civilian population" such that the settlers' conduct would constitute terrorism as defined in the statute.  See also In re Marzook, 924 F. Supp. 565, 577 n.13 (S.D.N.Y. 1996) ("One definition of terrorism is that it is indiscriminate violence toward civilians to terrorize the citizenship at large.").

By contrast, Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2001), which plaintiffs cite, involved a random drive-by shooting at an Israeli bus stop.  That conduct was terrorism in that it was plainly not directed at a particular individual; rather, the conduct was intended to frighten the Israeli population at large.  In other words, the conduct in Boim fit the statutory definition of "international terrorism"; the conduct alleged here does not.  Furthermore, the attack at issue in Boim was carried out by members of Hamas, which had been designated a terrorist organization by President Clinton in 1995.  Boim, 291 F.3d at 1002.  The defendants in this case have, of course, not been designated as terrorists or terrorist organizations by the U.S. government.

In sum, plaintiffs do not and cannot overcome the "general presumption against the extraterritorial application of statutes."  Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 530 (D.C. Cir. 1993).  Consequently, John Doe II's RICO claim against the Rinat Defendants should be dismissed.

**POINT II**

**THE COMPLAINT DOES NOT STATE A RICO ACT
CLAIM AGAINST THE RINAT DEFENDANTS**

Even if plaintiff John Doe II could overcome the threshold question concerning the extraterritorial application of the RICO Act, the Complaint fails to state a RICO claim against the Rinat Defendants.  Essential elements of claims under 18 U.S.C. § 1962(b), 1962(c) and 1962(d) are not pleaded.

**A.      No Claim Is Stated Under 18 U.S.C. § 1962(b)**

Plaintiffs' Fifth Claim fails to state a claim against the Rinat Defendants under 18 U.S.C. § 1962(b) in several respects.

As the Rinat Defendants showed in their opening brief, plaintiffs fail to plead a RICO "enterprise" having the requisite "(1)...common purpose among the participants, (2) organization, and (3) continuity."  United States v. Richardson, 167 F.3d 621, 625 (D.C. Cir. 1999);  see also United States v. Turkette, 452 U.S. 576, 583 (1981) (enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit").  According to their opposition brief, plaintiffs "allege a RICO enterprise between the Israeli defendants, the [Halamish] [s]ettlement, the [Neve Tzuf] Foundation and the Rinat [D]efendants."  (Pl. Br. 16).  However, no organization of the supposed

enterprise is ever alleged.

Even accepting the dubious proposition that the State of Israel, Israel's Prime Minister, Israel's Foreign Minister, Israel's Minister of Internal Security, the Israel Defense Forces, the Shin Bet, the Halamish settlement, a Teaneck, New Jersey synagogue and many others all had as a common purpose "the illegal appropriation and occupation of John Doe II's land" (Pl. Br. 17), the notion that the array of alleged conspirators, including the Rinat Defendants, were joined in an organized and continuing enterprise is laughable.  Even in their brief, plaintiffs fail to describe any structure or organization for the enterprise.  Plaintiffs do no more than state, in the most conclusory fashion, that "[e]ach of the groups of defendants, including the Rinat defendants, is alleged to play a definite and specific part in achieving their common purpose."  (Pl. Br. 17-18).  However, plaintiffs' reliance on conclusory allegations in place of "facts identifying the . . . organizational and decisionmaking structure of the alleged enterprise is fatal to their claim."  Dodd v. Infinity Travel, 90 F. Supp. 2d 115, 117 (D.D.C. 2000); see also Scheck v. General Elec. Corp., 1992 U.S. Dist. LEXIS 134, at *9 (D.D.C. 1992).  Moreover, plaintiffs' assertion that "a loosely connected group with a clear common purpose is sufficient" to satisfy the "enterprise" requirement (Pl. Br. 17) has no case law support.

Plaintiffs' claim also fails because a violation of § 1962(b), by its terms, would require that the Rinat Defendants have acquired an "interest in or control of" a RICO enterprise, yet no such interest or control is alleged.  (Opening Br. 12-13).  "A 1962(b) 'interest' in an enterprise is a proprietary one."  BCCI Holdings (Luxembourg) S.A. v. Khalil, 56 F. Supp. 2d 14, 50 (D.D.C. 1999), aff'd in part and rev'd in part on other grounds, 214 F.3d 108 (D.C. Cir. 2000).  "Control" of an enterprise "refers to 'the power gained over an enterprise's operations by

acquiring such an interest." <u>Welch Foods, Inc. v. Packer</u>, 1996 U.S. Dist. LEXIS 951, at *6

(W.D. Mich. 1996) (quotations and citations omitted).

        Plaintiffs argue that the Rinat Defendants' "regular and continuous donations of

thousands of dollars earmarked for specific paramilitary equipment more than suggests an

interest in the success of the enterprise -- the occupation of John Doe II's land and the exclusion

of John Doe II from his land."  (Pl. Br. 17).  In fact, though, the Complaint alleges merely that

the Rinat Defendants "provided funds."  (Complaint ¶ 74).  The Complaint contains no claim that

the Rinat Defendants made "regular and continuous donations of thousands of dollars." (<u>See</u> Pl.

Br. 17).  Even accepting, as plaintiffs urge, that the Rinat Defendants' contribution of funds

reflected "an interest in the success of the enterprise," that sort of emotional interest in the

outcome is not the sort of proprietary interest or control required by § 1962(b).

        Furthermore, as also shown in the Rinat Defendants' opening brief (Opening

Br. 13), plaintiffs fail to state a § 1962(b) claim against the Rinat Defendants because plaintiffs

do not allege that the Rinat Defendants themselves engaged in a "pattern of racketeering

activity."  Plaintiffs attempt to gloss over this fatal flaw, arguing that they "have alleged

numerous predicate acts including attempted murder and arson."  (Pl. Br. 16).  However, while

plaintiffs may allege predicate acts of racketeering activity by others, they do not allege any such

predicate acts by the Rinat Defendants as required by §1962 (b).

**B.**      <u>**No Claim Is Stated Under 18 U.S.C. § 1962(c)**</u>

        Plaintiffs do not dispute that a violation of 18 U.S.C. § 1962(c) requires, in the

words of the United States Supreme Court, "(1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity."  <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

As set forth above, plaintiffs state no claim against the Rinat Defendants under 18 U.S.C. §1962(c) both because the enterprise alleged in the Complaint lacks the structure or organization required of a RICO "enterprise," and because the Complaint does not allege that the Rinat Defendants themselves engaged in a "pattern of racketeering activity."

Moreover, for the purposes of § 1962(c), the "conduct" of an enterprise requires "some degree of direction."  Reves v. Ernst & Young, 507 U.S. 170, 179 (1993); see also Ulico Cas. Co. v. Professional Indemnity Agency, Inc., 1999 U.S. Dist. LEXIS 8591, at *21-22 (D.D.C. 1999); Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("'Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result.'. . .  'It is not the importance of such services that determines § 1962(c) liability, but whether the provision of those services allows the defendant to direct the affairs of the enterprise.'").  Yet even plaintiffs do not claim that the Rinat Defendants exercised any "degree of direction" over the alleged "enterprise."  Plaintiffs state that "[s]ending paramilitary equipment to 'secure' that illegal occupation is 'conduct' in furtherance of the illegal enterprise." (Pl. Br. 18).  However, plaintiffs cite no authority for their interpretation of the term "conduct," which ignores the Supreme Court's "direction" requirement.

## C.   No Claim Is Stated Under 18 U.S.C. § 1962(d)

The Complaint also fails to state a claim against the Rinat Defendants under 18 U.S.C. § 1962(d) which makes it unlawful for any person to conspire to violate 18 U.S.C. §§ 1962(b) or (c).  The above-mentioned failure of the Complaint to allege an "enterprise" with any organization or structure is fatal to plaintiffs' RICO claims against all defendants.  Absent an underlying claim under §§ 1962(b) or (c), John Doe II's § 1962(d) conspiracy claim against the

Rinat Defendants necessarily fails as well.  (See Opening Br. 18).

Plaintiffs' § 1962(d) claim is also lacking because the Complaint does not allege that the Rinat Defendants were party to an agreement to commit unlawful acts.  Such an agreement would be fundamental to any conspiracy.  (See Opening Brief 18-20).

Significantly, the Complaint does not allege that the Rinat Defendants funded the purchase of weapons.  Rather, the Rinat Defendants and various other defendants are alleged to have funded purchases of items such as body armor, night vision goggles, generators and armored jeeps and ambulances which were at least as likely to be used defensively as offensively.  Consequently, no agreement by the Rinat Defendants to commit unlawful acts can reasonably be inferred.

Plaintiffs err in arguing that the Rinat Defendants' support of the Halamish settlement's illegal occupation of John Doe II's land is in and of itself an agreement in furtherance of racketeering activity.  Plaintiffs provide no authority to support their contention that "the occupation of the land itself" is "racketeering activity" as defined by the RICO Act.  (Pl. Br. 19).  Nor do plaintiffs explain how that occupation could be deemed a "pattern."  Halamish's occupation of West Bank property would not be a "pattern of racketeering activity" even if it were illegal.

Finally, as mentioned above, if plaintiffs' claims require this Court to adjudicate whether the mere existence of an Israeli settlement in the West Bank is lawful, then plaintiffs' claims are barred by the political question doctrine.

**D.    The Complaint Does Not Allege That The Rinat Defendants Were A Proximate Cause Of John Doe II's Injuries**

As explained in the Rinat Defendants' opening brief, the Complaint also fails to state a RICO claim because a RICO plaintiff must allege that a defendant's violation of the RICO statute was a proximate cause of the plaintiff's alleged injury.  (See Opening Br. 21-22).

Even if the Rinat Defendants did fund equipment purchases by Halamish, as alleged in the Complaint, there is no allegation that John Doe II was harmed either by the actual items paid for by the Rinat Defendants or even by the types of items allegedly paid for by the Rinat Defendants.  In other words, the Complaint alleges that various Settler Defendants funded night vision goggles, body armor, ambulances and security fence repairs, but never asserts that these items were, in fact, used to harm John Doe II.

Moreover, in alleging causation, plaintiffs offer only speculation that without the Rinat Defendants' involvement the "paramilitary activity" directed against John Doe II "may never have taken place."  (Pl. Br. 6; emphasis added).  That is a far cry from alleging that the Rinat Defendants are a proximate cause of the harm supposedly suffered by John Doe II.

Plaintiffs concede that they must establish that the Rinat Defendants' alleged RICO violation was a proximate cause of John Doe II's injury by showing both that his injury was the intended or reasonably foreseeable consequence of the Rinat Defendants' funding of Halamish and that the funding was "a substantial factor in the sequence of possible causation." (Pl. Br. 19).  Consequently, plaintiffs' failure to allege that John Doe II was harmed by any of the equipment allegedly paid for by the Rinat Defendants is fatal to his claim.

**POINT III**

**IF JOHN DOE II'S RICO CLAIM AGAINST
THE RINAT DEFENDANTS IS DISMISSED THIS
COURT SHOULD DISMISS THE REMAINING
COMMON LAW TORT CLAIMS ASSERTED
AGAINST THE RINAT DEFENDANTS
FOR LACK OF PERSONAL JURISDICTION**

In moving to dismiss, the Rinat Defendants' showed that plaintiffs' only argument that this Court has personal jurisdiction over the Rinat Defendants depends on the RICO statute which permits nationwide service of process where the "ends of justice require it."  18 U.S.C § 1965(b).  Assuming, arguendo, that the Court has personal jurisdiction over the Rinat Defendants with respect to the RICO claim, the Court may also exercise pendent jurisdiction over John Doe II's other claims.  However, the Rinat Defendants have also demonstrated that the case law dictates that if the RICO claim is dismissed, the common law claims should be dismissed as well; the Court should not exercise pendent jurisdiction over the other claims. (Opening Br. 23).

In responding to the Rinat Defendants' motion, plaintiffs argue that this Court has personal jurisdiction over the Rinat Defendants through Rinat's "Internet contacts with the District of Columbia."  (Pl. Br. 22).    Yet, plaintiffs cite no authority for the proposition that the mere existence of an Internet Web site, without more, is sufficient contact to give rise to personal jurisdiction wherever the Web site is accessible.  In fact, plaintiffs acknowledge that "the courts have not gone as far as to determine jurisdiction without non-Internet contacts being present." (Pl. Br. 26).  See, e.g., Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 891 (6th Cir. 2002) ("NGS's website is not its only contact with the state.  The website must be considered

alongside NGS's other interactions with Michigan residents."); Blumenthal v. Drudge, 992 F. Supp. 44, 56 (D.D.C. 1998) ("[T]here must also be some other non-Internet related contacts between the defendant and the forum state in order for the Court to exercise personal jurisdiction."); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997) ("We are not being asked to determine whether Dot Com's web site alone constitutes the purposeful availment of doing business in Pennsylvania. . . . We are being asked to determine whether Dot Com's conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania."); Heroes Inc. v. Heroes Foundation, 958 F. Supp. 1, 5 (D.D.C. 1996) ("Because the defendant's home page is not the only contact . . . the Court need not decide whether the defendant's home page by itself subjects the defendant to personal jurisdiction in the District.").

Here, there is no suggestion that the Rinat Defendants have any contacts with the District of Columbia outside of the Internet.  Instead, plaintiffs attempt to make much of the fact that the Rinat Website is interactive.  In the Zippo case, however, the court explained that in circumstances such as this, where the defendant maintains "interactive Web sites where a user can exchange information with the host computer," the existence of personal jurisdiction "is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  952 F. Supp. at 1124.  Defendant Rinat -- an individual New Jersey synagogue -- is the most local of institutions.  The Rinat's Website is plainly intended for the use of the synagogue membership.  Although the Website is accessible worldwide wherever there is Internet access, that is an unintended consequence of how the Internet functions.  It is most unlikely that District of Columbia residents -- having no

relationship with a New Jersey synagogue -- would visit the Rinat Website.  It is even less likely that District residents would interact with Rinat via the Website.

The fact is that if the mere accessibility of Rinat's Website were to give rise to personal jurisdiction over Rinat in this district, the Internet would itself create nationwide jurisdiction in numerous cases.  In <u>GTE New Media Servs. Inc. v. BellSouth Corp.</u>, 199 F.3d 1343 (D.C. Cir. 2000), the D.C. Circuit court held that access to an Internet Website did <u>not</u> give rise to jurisdiction in this district even where the defendants had supposedly acted to maximize the usage of their Websites in this district.  As the court stated:

> "[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District. . . GTE's theory of jurisdiction rests on the claim that, because the defendants have acted to maximize usage of their websites in the District, mere accessibility of the defendants' websites establishes the necessary "minimum contacts" with this forum.  . . . This theory simply cannot hold water.  Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country.  We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.  The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.  In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence."

<u>Id</u>. at 1350.

Finally, there is no personal jurisdiction here under the D.C. long arm statute because Rinat's supposed contact with the District is not alleged to have given rise to the harms

supposedly suffered by John Doe II in the West Bank.  See Gowens v. Dyncorp, 132 F. Supp. 2d 38, 41, 42 (D.D.C. 2001).  There is not even an allegation that District of Columbia residents actually accessed the Rinat Website much less that District residents contributed funds to Rinat and that such contributions were used to harm John Doe II.

In short, there is no reason to think that Rinat has any contact with District of Columbia residents via the Internet or that the accessibility of Rinat's Website in the District has any relationship with this case.  Given that the Rinat Defendants indisputably have no other contact with this district, there is no basis for personal jurisdiction in this Court independent of plaintiffs' RICO claim.[3]

### POINT IV

### THE COMPLAINT FAILS TO STATE COMMON LAW TORT CLAIMS AGAINST THE RINAT DEFENDANTS

The Rinat Defendants' opening brief demonstrates that regardless of whether the Court has personal jurisdiction over them, the Complaint fails to allege necessary elements of plaintiffs' purported claims for battery, assault, intentional and negligent infliction of emotional distress, negligence per se, trespass and conversion.  (Opening Br. 26-31).

In their answering papers, plaintiffs make clear that they do not claim that the Rinat Defendants were primary wrongdoers.  Rather, plaintiffs claim that the Rinat Defendants should be held liable for the wrongdoing of others as conspirators or aiders and abettors. (P1-Br. 26-29).

---

[3]     Plaintiffs' effort to predicate personal jurisdiction on the Internet site is directed at defendant Rinat alone.  Rinat Defendants Rabbi Yosef Adler and Arnon Hiller do not maintain Internet sites of their own.

Again, however, plaintiffs resort to creating new, unpleaded allegations in an effort to remedy the manifest shortcomings of their Complaint.  Thus, for example, plaintiffs now assert that the Rinat Defendants "provided money and equipment knowing and intending that the money and equipment would be used to further the illegal occupation of John Doe II's land."  (Pl. Br. 28).  Plaintiffs further falsely claim to have alleged "that the Halamish Settlement provided detailed orders of paramilitary equipment and the Rinat Defendants endeavored to raise funds to fill those orders."  (Id.)  Those allegations do not appear in the Complaint.

In any event, plaintiffs do not plead an aiding and abetting claim against the Rinat Defendants in that they fail to allege that the Rinat Defendants "knowingly and substantially assist[ed] the principal violation" and acted being "generally aware of [their] role as part of an overall illegal or tortious activity."  Halberstam v. Welch, 705 F.2d 472, 487-88 (D.C. Cir. 1983).  Also, plaintiffs never allege that John Doe II was, in fact, harmed by any of the various items supposedly paid for by the Rinat Defendants.

Finally, plaintiffs' conspiracy allegation, as mentioned above in Point II.C, is also lacking.  The Complaint never alleges that the Rinat Defendants entered into an agreement with anyone to participate in an unlawful act.  (See Opening Br. 31-33).  Absent that most basic allegation, the Complaint states no conspiracy claim against the Rinat Defendants.

## CONCLUSION

Based on the foregoing, the Rinat Defendants' motion to dismiss should be granted in all respects.  Plaintiffs' Fifth Claim, alleging a violation of the RICO Act, should be dismissed as against the Rinat Defendants for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.  Plaintiffs' Eleventh, Thirteenth,

Fourteenth, Fifteenth, Sixteenth, Seventeenth and Eighteenth claims, purportedly asserting

common law tort claims, should be dismissed as against the Rinat Defendants for lack of

personal jurisdiction or, alternatively, for failure to state a claim upon which relief can be

granted.


Dated:  April 14, 2003                          Respectfully submitted,



                                          _____
                                          David O. Bickart (355313)
                                          KAYE SCHOLER LLP
                                          The McPherson Building
                                          901 Fifteenth Street, N.W, Suite 1100
                                          Washington, DC  20005-2327
                                          (202) 682-3500

                                          Aaron Stiefel
                                          KAYE SCHOLER LLP
                                          425 Park Avenue
                                          New York, NY 10022
                                          (212) 836-8000

                                          Attorneys for Defendants
                                          Congregation Rinat Yisrael,
                                          Rabbi Yosef Adler and Arnon Hiller

### TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I

      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER JOHN DOE II'S
      RICO ACT CLAIM AGAINST THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . 4

POINT II

      THE COMPLAINT DOES NOT STATE A RICO ACT CLAIM AGAINST
      THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.     No Claim Is Stated Under 18 U.S.C. § 1962(b) . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.     No Claim Is Stated Under 18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . 11

      C.     No Claim Is Stated Under 18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . 12

      D.     The Complaint Does Not Allege That The Rinat Defendants
              Were A Proximate Cause Of John Doe II's Injuries . . . . . . . . . . . . . . . . . . . . 14

POINT III

      IF JOHN DOE II'S RICO CLAIM AGAINST THE RINAT DEFENDANTS IS
      DISMISSED THIS COURT SHOULD DISMISS THE REMAINING COMMON LAW
      TORT CLAIMS ASSERTED AGAINST THE RINAT DEFENDANTS
      FOR LACK OF PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

POINT IV

      THE COMPLAINT FAILS TO STATE COMMON LAW TORT CLAIMS AGAINST
      THE RINAT DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

\*<u>BCCI Holdings (Luxembourg S.A. v. Khabil</u>, 56 F. Supp. 2d 14 (D.D.C. 1999) . . . . . . . . .  10

\*<u>Baker v. Carr</u>, 369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

<u>Blumenthal v. Drudge</u>, 992 F. Supp. 44 (D.D.C. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Boim v. Quranic Literacy Inst.</u>, 291 F.3d 1000 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Dodd v. Infinity Travel</u>, 90 F. Supp. 2d 115 (D.D.C. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Environmental Defense Fund, Inc. v. Massey</u>, 986 F.2d 528 (D.C. Cir. 1993) . . . . . . . . . . . . . . 9

\*<u>GTE New Media Services Inc. v. Bellsouth Corp.</u>, 199 F. 3d 1343 (D.C. Cir. 2000) . . . . . . . 17

\*<u>Giro v. Banco Espanol de Credito, S.A.</u>, 1999 U.S. Dist. LEXIS 9673 (S.D.N.Y. 1999), <u>aff'd</u>
         208 F.3d 203 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Gowens v. Dyncorp</u>, 132 F. Supp. 2d 38 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

\*<u>Halberstam v. Welch</u>, 705 F. 2d 472 (D.C. Cir. 1983)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Henthorn v. Department of Navy</u>, 29 F. 3d 682 (D.C. Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Heroes Inc. v. Heroes Foundation</u>, 958 F. Supp. 1 (D.D.C. 1996)  . . . . . . . . . . . . . . . . . . . . . . 16

<u>In re Marzook</u>, 924 F. Supp. 565 (S.D.N.Y. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>In re Vitamins Antitrust Litig.</u>, 2001 U.S. Dist. LEXIS 25072 (D.D.C. 2001)  . . . . . . . . . . . . . 6

<u>Japan Whaling Ass'n v. American Cetacean Society</u>, 478 U.S. 221 (1986)  . . . . . . . . . . . . . . . . 7

<u>John Doe I v. Unocal Corp.</u>, 2002 U.S. App. LEXIS 19263 (9th Cir. 2002)  . . . . . . . . . . . . . . . 4

<u>John Doe I v. Unocal Corp.</u>, 2003 U.S. App. LEXIS 2716 (9th Cir. 2003)  . . . . . . . . . . . . . . . . 4

<u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883 (6th Cir. 2002) . . . . . . . . . . . . . . . . . 15

\*<u>North South Fin. Corp. v. Al-Turki</u>, 100 F. 3d 1046 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 4

<u>Parker v. Frank</u>, 1992 U.S. Dist. LEXIS 5263 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Psimenos v. E.F. Hutton & Co., 722 F.2d 1041 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Reves v. Ernst & Young, 507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Scheck v. General Elec. Corp., 1992 U.S. Dist. LEXIS 134 . . . . . . . . . . . . . . . . . . . . . . . . .  10

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . .  12

*Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Ulico Cas. Co. v. Professional Indemnity Agency, Inc., 1999 U.S. Dist. LEXIS 8591 (D.D.C.
     1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Richardson, 167 F.3d 621 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Turkette, 452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Welch Foods, Inc. v. Packer, 1996 U.S. Dist. LEXIS  951 (W.D. Mich. 1996) . . . . . . . . . . .  11

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) . . . . . . . . . . . .  16

## STATUTES AND RULES

18 U.S.C. §§ 1962(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 10, 11, 12

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 11, 12

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 12, 13

18 U.S.C. § 2331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

18 U.S.C § 1965(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

18 U.S.C. § 2333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1