1

THE LEGAL ADVISER

DEPARTMENT OF STATE

WASHINGTON

May 28, 2003

Robert D. McCallum, Jr.
Assistant Attorney General
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Dear Mr. McCallum:

Doe, et al. v. State of Israel, et al., Case No.
1:02CV01431, is an action pending in the United States District
Court for the District of Columbia.  The suit names Ariel
Sharon, the Prime Minister of Israel, as a defendant.

Prime Minister Sharon is the sitting head of government of
Israel.  In light of this status, the Government of Israel has
formally requested that the Government of the United States take
all steps necessary to have this action against Prime Minister
Sharon dismissed.

The Department of State recognizes and allows the immunity
of Prime Minister Sharon from this suit.  Under customary rules
of international law, recognized and applied in the United
States, Prime Minister Sharon is immune from the jurisdiction of
the United States courts in this case.  Accordingly, the
Department of State requests that the Department of Justice
submit to the district court an appropriate Suggestion of
Immunity.

This letter recognizes the particular importance attached
by the United States to obtaining the prompt dismissal of the
present proceedings against Prime Minister Sharon in view of the
significant foreign policy implications of such an action.

Sincerely,

William H. Taft, IV

cc:  Vincent Garvey, Esq.
     Federal Programs Branch

     Ori Lev, Esq.
     Federal Programs Branch

**2**



ENTERE

FEB 2 1 1986

ERK, U.S. DISTRICT COU
L DISTRICT OF CALIF

FILE

FEB 1 8 1986

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

RECEIVED

FEB 21 1986

U. S. ATTORNEY
CIVIL DOCKETS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JACK GERRITSEN,                    )    NO. CV 85-5020-PAR
                                   )
                  Plaintiff,       )
                                   )
        v.                         )
                                   )
MIGUEL DE LA MADRID                )
HURTADO, et. al,                   )
                                   )
                  Defendant.       )
_____)

This action arises out of plaintiff's attempts to distribute leaflets critical of the Mexican government. Plaintiff claims his constititutional rights were violated by defendants' use of threats and force attempting to thwart his activities.   Plaintiff seeks damages and injunctive relief for deprivation of his First and Fourth amendment rights against the following defendants: Miguel de la Madrid Hurtado, President of Mexico; Javier Escovar y Cordova and Agustin Garcia Lopez Santaolalla, Consuls general of Mexico; Enrique Silva Guzman, Vice Consul; Salvador Uribe, Administrative Assistant of the Mexican consulate; and two Doe defendants.   All defendants are

-1-

1  being  sued  in  their  individual  and  official  capacities.
2  Jurisdiction  is  invoked  pursuant  to  28  U.S.C.  § 1343(3).
3  Defendants move, through the United Mexican States ("UMS"), to
4  dismiss the complaint.  Plaintiff has filed a motion to prevent
5  the UMS from appearing as counsel before this court.   In
6  addition, the United States Government has filed a suggestion of
7  immunity in favor of President de la Madrid.

8         The complaint alleges that on June 27, 1983, plaintiff
9  was attempting to distribute leaflets in the El Pueblo de la Los
10  Angeles State Historical Park when an agent employed to protect
11  the consulate, Reyes Cortes, confronted him and demanded that he
12  cease. (Complaint ¶ 8).  On June 28, 1983, plaintiff again
13  attempted to distribute leaflets and was stopped by Cortes who,
14  in service to the Mexican government, demanded that plaintiff
15  leave the park, broke plaintiff's camera, attempted to confiscate
16  the leaflets, and raised a club in a threatening manner. (Id. ¶
17  9).  Later that same day, plaintiff was handcuffed by Cortes and
18  forced to enter the consulate, where defendant Uribe struck
19  plaintiff with his fists and feet.  Plaintiff was then held,
20  against his will, in a room in the consulate for two hours of
21  interrogation and threats. (Id. ¶10).

22         On August 5, 1983, plaintiff was shoved down the stairs
23  located outside the northeast corner of the consulate by Uribe.
24  (Id. ¶ 11).  On September 20, 1983, while distributing leaflets,
25  plaintiff  was  restrained  by  defendant  Cordova  without  his
26  consent.  Cordova then "pursued a process" whereby plaintiff was
27  arrested, booked and had his handbills confiscated. (Id. ¶ 12).
28  The arrest report, incorporated into the complaint, indicates

-2-

1   that the arrest was a "citizen's arrest," and that the Los

2   Angeles Police Department officers were only transporting

3   plaintiff to custody pursuant to Cordova's citizen's arrest and

4   assisting with paperwork. (Complaint, Exh. A, p. 12). On October

5   25, plaintiff was attacked by Uribe to prevent plaintiff from

6   distributing leaflets. (Id. ¶ 13)

7         On June 18, 1984, while distributing leaflets,

8   plaintiff was "pushed" away from the consulate by both diplomatic

9   aide Oscar Mejia, and Uribe. (¶ 14). On July 31, 1984, plaintiff

10  was restrained, for some unknown purpose, by Cordova while

11  distributing leaflets. (¶ 15). On September 14, 1984, plaintiff

12  was handcuffed by an unidentified member of the Mexican

13  consulate, and transported to a remote location of the park,

14  whereupon the agent destroyed the contents of his camera.   (¶

15  16).

16        On June 20, 1985, while plaintiff was peacefully

17  distributing his leaflets, defendant Santaolalla threatened to

18  take "more serious measures against plaintiff." Later that day

19  Uribe threatened plaintiff with a gun. (Id. ¶ 17). On July 17,

20  1985 Uribe struck plaintiff with a sign. (Id. ¶ 18). On the

21  19th Uribe struck plaintiff in the face, and on the 25th, Uribe

22  struck plaintiff with a heavy metal sign. (Id. ¶ 20).   On the

23  26th Uribe smashed plaintiff's right foot with his left foot.

24  (Id. ¶ 21).

25        Defendants Santaolalla and Guzman allegedly promoted,

26  encouraged and permitted these "terrorist" acts against

27  plaintiff. In addition they permitted the use of amplified sound

28  from loudspeakers. (Id. ¶ 22). This sound allegedly violated

-3-

plaintiff's communication rights from the hours of 7:00-8:00 A.M., five days a week. (Id.). Plaintiff also alleges that all defendants participated in a conspiracy to deny plaintiff of his speech and press rights. (Id. ¶ 23).

On January 7, 1986 plaintiff filed a supplemental declaration to his complaint indicating that on December 18, 1985, plaintiff was attempting to distribute leaflets in front of the consulate when Uribe struck plaintiff with a disc-shaped piece of metal. On December 19, 1985, Uribe allegedly beat defendant with a metal chain, causing defendant to lose consciousness. The police were summoned, and arrested Uribe for assault with a deadly weapon. Uribe was set for arraignment on January 16, 1986; however, the court has not been apprised as to the results of that hearing.

1. United Mexican States

Under Local Rule 2.9.1 no unincorporated association may appear in any action or proceeding pro se. Although an individual may represent himself without an attorney, that representation may not be delegated to any other person. Thus, UMS may not appear on behalf of the individuals in this action, and may not appear as attorney of record for the individual defendants. The individuals may either appear on their own behalf, or obtain counsel admitted to practice in this court.

2. Personal Jurisdiction: President de la Madrid

The court has inherent power to dismiss an action for lack of subject matter jurisdiction or for failure to state a claim on the merits, where, as in this case, the plaintiff has received notice of the grounds for dismissal, and has filed

-4-

1  lengthy papers in response. See, e.g., Amfac Mtg. Corp. v.

2  Arizona Mall of Tempe, 583 F.2d 426 (9th Cir. 1978); Sanborn v.

3  U.S., 453 F.Supp. 651, (E.D. Cal. 1978); see also  Wood v.

4  McEwen, 644 F.2d 797, (9th Cir. 1981);  Wong v. Bell, 642 F.2d

5  359 (9th Cir. 1981).

6       In its papers UMS moved to dismiss the action as to

7  President de la Madrid on the ground that the court lacks

8  personal jurisdiction. Although ordinarily a court may not sua

9  sponte dismiss for lack of personal jurisidiction, that rule is

10 inapplicable where the defendant has: 1) indicated his objection

11 to jurisdiction; and 2) has not appeared by filing a motion or

12 otherwise. First National Bank of Louisville v. Bezema, 569

13 F.Supp. 818 (S.D. Ind. 1983). The court's determination of

14 whether it has personal jurisdiction over President Hurtado is

15 governed by the same due process standard applicable to actions

16 generally. Thos. P. Gonzalez Corp. v. Consejo Nacional, Etc.,

17 614 F.2d 1247 (9th Cir. 1980).

18       Whether a party's contacts are sufficient to permit the

19 court to exercise jurisdiction depends on the facts of the case.

20 The exercise of general jurisdiction is appropriate only when a

21 defendant has "substantial," or "systematic and continuous"

22 contacts with the forum state. Data Disc, Inc. v. Systems Tech.

23 Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). There is

24 nothing in the record to indicate that President de la Madrid has

25 any contacts with California, and thus the exercise of general

26 jurisdiction is inappropriate.

27       Nor are there any facts in the record that would

28 support limited jurisdiction over the President based on the

-5-

1    nature and quality of his forum contacts in relation to the

2    claims asserted in the complaint.  Data Disc requires that three

3    factors be considered:  First, whether the nonresident has done

4    some act or consummated some transaction with the forum or

5    performed some act by which he purposefully avails himself of the

6    privilege of conducting activities in the forum, thereby invoking

7    the benefits and protections of its laws; second, the claim must

8    be one which arises out of or results from the defendant's

9    forum-related activities; and third, exercise of jurisdiction

10   must be reasonable.  Id. at 1287.

11        Plaintiff alleges only that President de la Madrid

12   participated in a conspiracy to deprive plaintiff of his

13   constitutional rights, from which he argues that jurisdiction is

14   proper because the President allegedly appointed the other

15   defendants and failed properly to supervise their actions.

16   Plaintiff has demonstrated no contacts of President de la Madrid

17   with California; and thus no "purposeful availment" of the

18   benefit of conducting activities in California.  The alleged

19   tortious acts of President Hurtado must have originated outside

20   of California, presumably Mexico.  The UMS is not a defendnat in

21   this case, and it is improper to attribute the contacts of the

22   government, by virtue of the consulate, to the President as an

23   individual, whether he is alleged to be acting in a personal or

24   official capacity.  In these circumstances it is not sufficient

25   for jurisdiction that the act in Mexico imposes a burden on a

26   California resident.  See Thos. P. Gonzalez Corp. 614 F.2d at

27   1253.

28        Nor is the exercise of jurisdiction appropriate because

-6-

President de la Madrid has allegedly utilized the mail system to communicate with the consulate. This is not the kind of purposeful activity which supports jurisdiction. See, Thos P. Gonzalez, 614 F.2d 1247; Peterson v. Kennedy, 771 F.2d 1244 (9th Cir. 1985). Further, the exercise of jurisdiction in these circumstances would not be reasonable, in light of the potential heavy burden placed on President de la Madrid to appear in California to defend against this action.

Because it is inappropriate to assert jurisdiction over the President it is unnecessary to determine if service of process were proper, or to apply the "Act of State" doctrine to bar this action.

3.  Suggestion of Immunity

On December 15, 1985, the United States, pursuant to 28 U.S.C. § 517, filed a "Suggestion of Immunity" in favor of President de la Madrid. Historically, courts of the United States have been bound by Suggestions of Immunity submitted to the courts by the executive branch. Ex Parte Republic of Peru, 318 U.S. 578, 588-89 (1942); Spacil v. Crowe, 489 F.2d 614, 617 (5th Cir. 1974). However, in 1976 Congress passed the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1603 et. seq., to make justiciable the question of sovereign immunity of foreign states, thereby freeing the executive branch from the diplomatic pressures involved in granting or denying requests of foreign states for sovereign immunity. Verlindin B.V. v. Central Bank of Nigeria, 461 U.S. 480, (1983). The FSIA provides the courts of the United States jurisdiction, in limited circumstances, over claims of United States citizens against foreign states, as

-7-

defined in the Act.

The FSIA defines a foreign state in § 1603 as a "political subdivision of a foreign state or an agency or instrumentality of a foreign state." The section as phrased does not refer to individual representatives of foreign governments. Further, the enactment of the FSIA was not intended to affect the power of the State department to assert immunity for diplomatic and consular personnel. See 22 U.S.C. § 254a-e. The State department Suggestion of Immunity for diplomatic personnel has generally been accepted as conclusive by the courts. See Abdulazia v. Metropolitan Dade County, 741 F.2d 1328 (11th Cir. 1984); Carrera v. Carrera, 174 F.2d 496, 497 (D.C. Cir. 1949); see also United States v. Lumumba, 741 F.2d 12, 15 (2nd Cir.1984) ("recognition by the executive branch--not to be second-guessed by the judiciary--is essential to establishing diplomatic status."). Diplomatic status can be conferred after the filing of a lawsuit. Abdulazia, 741 F.2d at 1331, and the State Department has "broad discretion" to classify diplomats. Id.

Thus, it is clear that the State Department has the power to confer immunity on the diplomatic representatives of foreign governments. A head of state of a foreign government is indisputably a representative of that state in its dealings with the United States, and it would be within the power of the State Department to grant immunity to a head of state during a visit to the United States. See, Abdulazia at 1330. There is no basis, consistent with the purposes behind the granting of diplomatic immunity, to restrict the State Department from suggesting immunity on behalf of representatives of foreign governments for

-8-

actions taken inside the foreign state, when the very same
actions would be protected by a grant of immunity if taken inside
the United States.   Accordingly, the Suggestion of Immunity
offered by the State Department in favor of President de la
Madrid is accepted, and the President is dismissed from the
action, with prejudice.

    4. Lack of Subject Matter Jurisdiction.

    Plaintiff invokes jurisdiction pursuant to 28 U.S.C. §
1343.  Jurisdiction over plaintiff's claim for violations of his
First and Fourth amendment rights is appropriate only when the
deprivation is "under color of state law." This requirement has
"consistently been treated as the same thing as the 'state
action' required under the Fourteenth Amendment." Rendell-Baker
v. Kohn, 457 U.S. 830 (1982).   The Fourteenth Amendment, which
prohibits the states from denying federal constitutional rights
and which guarantees due process, applies to acts of states, not
private persons or entities.  Shelley v. Kraemer, 334 U.S. 1
(1948).   Thus, the requirement of state action is both a
jurisdictional and substantive requirement.   See, Blum v.
Yaretsky, 457 U.S. 991 (1982)(failure of respondents to establish
state action was failure to prove violation of rights secured by
fourteenth amendment); Jackson v. Metropolitan Edison Co., 419
U.S. 345, 349 (1974)(private conduct, "however discriminatory or
wrongful," not actionable under the 14th amendment); Public
Utilities Commission of the District of Columbia v. Pollack, 343
U.S. 451 (1952)(First amendment does not apply to or restrict
private persons).

    The ultimate question in determining whether an alleged

-9-

infringement of constitutional rights is actionable is whether the infringement is "fairly attributable to the state." Rendell-Baker v. Kohn, 457 U.S. at 838, citing, Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). If the alleged infringement is not state action, there is no jurisdiction and thus, "our inquiry ends." Id.

The alleged unconstitutional actions taken against plaintiff were all taken by members of the Mexican consulate or officials of the Mexican government. Although the individuals were alleged to be acting on behalf of the Mexican government, and thus not strictly as private individuals, they are not alleged to be acting on behalf of a state or territory of the United States, and thus their actions are not attributable to state or federal officials and are not "under color of state law." See District of Columbia v. Carter, 409 U.S. 418, 421 (1973)(civil rights action for violation of Fourth amendment rights against District of Columbia police officer not actionable because District of Columbia is not a state within meaning of Fourth Amendment and neither the District nor its officers are subject to its restrictions); cf. Examining Board v. Flores de Otero, 426 U.S. 572 (1976)(district court has jurisdiction under 28 U.S.C. § 1343 of a claim alleging the unconstitutionality of a Puerto Rico statute because the Fifth and Fourteenth amendments apply to Puerto Rico, and territories of the United States are included in § 1343.)

The only state involvement for purposes of § 1343 in the incidents upon which the complaint is based occurred when plaintiff was placed under citizen's arrest, and when Uribe was

-10-

1   arrested by the Police Department for allegedly assaulting
2   plaintiff with a deadly weapon in December, 1985.   In the arrest
3   of plaintiff, the signed arrest report clearly indicates that the
4   arrest was purely a "citizen's arrest" and the officers were
5   merely assisting with paperwork and transport.   In addition, it
6   is clear from plaintiff's supplemental declaration that the Los
7   Angeles Police Department assisted plaintiff by placing defendant
8   Uribe under arrest.   The incidents alleged in the complaint do
9   not constitute "significant encouragement," of the alleged
10  deprivations of constitutional rights, such that "choice in law
11  must be deemed to be that of the state," Blum v. Yaretsky, 457
12  U.S. 991, 1003 (1982).

13          Accordingly, for the reasons stated above, President de
14  la Madrid is dismissed from this action with prejudice;
15  plaintiff's complaint is dismissed for lack of subject matter
16  jurisdiction.

17  Dated:   February 5, 1986.

18

19

20                              Pamela Ann Rymer
                            United States District Court

21

22

23

24

25

26

27

28

-11-

**3**

CAUSE NO. 93-CI-11345

| | |
|---|---|
| GUARDIAN F., INDIVIDUALLY<br>AND AS NEXT FRIEND OF MINOR G., | ) IN THE DISTRICT COURT |
| Plaintiff, | ) 225TH JUDICIAL DISTRICT |
| v. | ) |
| ARCHDIOCESE OF SAN ANTONIO, et al., | ) BEXAR COUNTY, TEXAS |
| Defendants. | ) |

## ORDER

The United States of America has filed a Suggestion of
Immunity in this cause. The Suggestion indicates that Pope John
Paul, II, a named defendant, is the sitting head of state of a
friendly foreign state, the state of Vatican City. It further
states, and attaches a letter indicating, that the United States
Department of State has recognized and allowed the immunity of
the Pope from this lawsuit.

The courts of the United States are bound by a Suggestion of
Immunity filed by the United States. When such a Suggestion of
Immunity is filed, it is the duty of the Court to surrender
jurisdiction. See, e.g., Republic of Mexico v. Hoffman, 324 U.S.
30, 35-36 (1945); Ex Parte Peru, 318 U.S. 578, 588-89 (1943);
LaFontant v. Aristide, ___ F. Supp. ___, 1994 WL 30044, *13
(E.D.N.Y. Jan. 27, 1994); Saltany v. Reagan, 702 F. Supp. 319,
320 (D.D.C. 1988), aff'd in part and rev'd in part on other
grounds, 886 F.2d 438, 441 (D.C. Cir. 1989), cert. denied, 495
U.S. 932 (1990); Anonymous v. Anonymous, 581 N.Y.S.2d 776, 777
(N.Y. App. Div. 1992).

Therefore, pursuant to the Suggestion of Immunity submitted

by the United States, and for good cause shown, it is hereby:

ORDERED that the plaintiffs' claim against Pope John Paul, II, is hereby dismissed with prejudice.

Dated: _Marzh 15_, 1994

_Michael Ped_

DISTRICT JUDGE

- 2 -